STATE, RESPONDENT, *v.* SHADWELL, APPELLANT.

(No. 1,635.)

(Submitted October 3, 901. Decided November 4, 1901.)

*Criminal Law—Homicide—Self-Defense—Evidence—Previous Threats — Instructions — Presumption — Appeal — Preservation of Error.*

1. Where, on a trial for murder, in which the accused pleaded self-defense, it was shown that the deceased had previously threatened the accused, an instruction directing the jury to disregard such prior threats unless the accused at the time of the killing was actually assailed, or believed he was in great bodily danger, was erroneous.

2. On a prosecution for murder, where the defendant pleaded self-defense, the court instructed that threats by the deceased against the defendant should not be considered unless the defendant was actually assailed, or believed he was in great bodily danger. This instruction was followed by another, authorizing the consideration of any threats the deceased may have made against the defendant, to enable the jury to determine defendant's acts or the deceased s motives. *Held*, that the instructions were conflicting, and constituted reversible error.

3. An error is presumptively prejudicial to the defeated party, and the presumption is rebutted only when it appears that it either was not or could not have been injurious

4. Where there was evidence tending to show defendant guilty of murder in the first degree, of murder in the second degree, and of manslaughter, it is the duty of the court to instruct explicitly that a verdict for manslaughter may be returned, manslaughter not being a degree of murder.

5. The fact that the accused endeavored to show that the killing was done in self-defense does not render an instruction authorizing a conviction of manslaughter unnecessary.

6. On a second trial for murder it was not error to read the testimony of a deceased witness, including an erroneous ruling of the court on the evidence, where no objection to the reading of the ruling was raised at the time.

7. Errors not excepted to in the court below cannot be reviewed on appeal.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

G. R. SHADWELL was convicted of murder of the second degree, and he appeals. Reversed.

*Mr. B. S. Thresher,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. JUSTICE PIGOTT delivered the opinion of the court.

This case is now before the court for the second time. Upon the first appeal the defendant, who had been convicted of murder of the first degree, was granted a new trial. The opinion is reported in *State v. Shadwell,* 22 Montana 559, 57 Pacific Reporter 281. The result of the second trial was a verdict of guilty of murder of the second degree, followed by a judgment sentencing the defendant to life imprisonment. From the judgment and from an order refusing a new trial the defendant appeals. The evidence adduced upon the second trial was much the same as that received upon the first trial, the statement of which is made in the former opinion.

1.     There was evidence tending to prove that two or three days before the fatal encounter O'Connor, the decedent, had applied vile epithets to the defendant, at the same time telling him that if he did not cut the cards right he would kill him, the manner, tone of voice and conduct of the decedent being threatening; that a few minutes before the fatal shot was fired the decedent threatened to put the defendant "where they don't play cards, and break a chair over your (the defendant's) head;" that either on the night of the homicide or on the day before, the decedent told one Hammer that he would take a chair and beat the defendant to death, which threat was not communicated by Hammer to the defendant. There was evidence tending to prove also that the defendant, at the time he killed the decedent was acting in self-defense, as well as evidence the tendency of which was to the contrary.

The court gave the following instruction: "(26) The court instructs the jury that no threats or menaces made by the deceased, O'Connor, against the defendant, Shadwell, can avail the defendant unless he, at the time of the killing, was actually assailed, or had sufficient evidence to convince any reasonable person that he was in danger of incurring great bodily injury or of losing his life at the hands of the deceased. Whatever threats may have been made by the deceased, they cannot be of avail to the defendant, unless at the time of the killing something was done that would induce a reasonable man to suppose he was in danger of great bodily harm or of losing his life. All antecedent threats are dependent upon the facts at the time of the killing, and, in order to justify the homicide, it must appear that at the time of the killing there was some action which would induce a reasonable man to believe that he was in danger of great bodily harm or of losing his life."

This instruction, the defendant insists, is an erroneous statement of the law as applicable to the evidence, and that it is in conflict with instruction No. 27. We must sustain the contention. The instruction quoted virtually directed the jury to disregard all prior threats of the decedent against the defendant

unless something was done, or some action taken, by the decedent which would induce a reasonable man to believe himself in danger of great bodily harm or of losing his life; that the conduct of the decedent at the time of the killing must, of itself and independently of the antecedent threats, have been sufficient to convince a reasonable person that he was in danger of great bodily harm or of losing his life at the hands of the decedent. It told the jury, in effect, that the threats were not pertinent to the consideration of the question whether or not the defendant was actually assailed or as a reasonable man believed himself in danger of great bodily injury or in peril of life at the hands of the decedent;—in other words, that the prior threats of the decedent were not to be considered unless and until the evidence disclosed that the homicide was committed in necessary self-defense, for, if at the time of the killing the defendant "had sufficient evidence to convince any reasonable person that he was in danger of incurring great bodily injury or of losing his life at the hands of the deceased," and acted upon such conviction, the homicide was justifiable under Sections 361 and 362 of the Penal Code. It seems clear that the instruction attempted to withdraw from the jury the right to consider antecedent threats until their duty required a verdict of acquittal, in which case evidence of threats could perform no function whatever. Such is not the law. Evidence of threats made by the decedent against the defendant, and communicated to him, was admissible in the latter's favor as tending to characterize the acts and conduct of the decedent and of the defendant at the time of the killing, and such threats (if made) should have been taken into consideration by the jury in order that they might correctly decide whether the defendant had reason to believe himself in imminent danger of great personal harm or of losing his life; in other words, evidence of the prior threats should be considered with, not apart from, the conduct and acts of the decedent (as well as of the defendant) at the time of the homicide. Evidence of communicated threats of the decedent was admissible in favor of the defendant because of its tendency

to show the state of mind of the defendant and of the decedent, and as illustrating the motives, intention and conduct of each at the time of the homicide. With reference to evidence tending to prove prior communicated threats of the decedent, the former opinion in this case contains the following language: "Now, in probing that motive, to ascertain whether he was prompted by malice, and acted maliciously, or whether he believed he was in danger of great bodily harm at the hands of the deceased during the movements of the two at the card table, just before and at the time of the killing, it was competent to prove previous threats of violence made towards defendant by O'Connor, as tending to show a cause for the belief Shadwell says he entertained that he was in great danger of receiving harm from O'Connor at the time that he fired at him and killed him." Threats of the decedent against the defendant which had not been communicated to the latter, were admissible for the purpose of indicating or tending to show that the decedent brought on the conflict or was the aggressor or assailant, and that the defendant acted in necessary self-defense,—evidence of such uncommunicated threats was relevant as tending to shed light upon or show the intention and animus of the decedent and to characterize his conduct. While prior threats of the decedent against the defendant, whether communicated or not, are inadmissible in justification unless at the time of the killing the decedent indicated by his conduct an intention to carry them into execution (*Territory* v. *Campbell,* 9 Montana 16, 22 Pacific Reporter 121; *State* v. *Hall,* 9 Nev. 58), evidence that they were made is relevant and material wherever there is any evidence tending to show such conduct or to prove that the decedent was the assailant at the time of the homicide;—to express it in another form: To justify the homicide in a case like the one at bar, there must be such overt act or such manifestation of present purpose on the part of the decedent to execute the threat as to induce a reasonable belief in the defendant that he will suffer great personal injury or lose his life unless he at once defend himself, and in the effort to determine

whether, under all the circumstances taken together, there was an overt act or manifestation, sufficient to induce such belief in the defendant, evidence of previous communicated threats of the decedent must be considered by the jury; and previous uncommunicated threats of the decedent against the defendant are admissible as evidence of the decedent's animus, where a controversy exists as to who was the assailant, or as to whether overt acts were then committed by the decedent which were sufficient to create in the mind of the defendant a reasonable fear that he was in imminent danger of suffering great bodily harm or of losing his life at the hands of the decedent,—as we have already said, in effect, evidence of such uncommunicated threats should be considered as tending to show the state of mind and intent of the decedent, and whether he was the aggressor at the time of the homicide, and, if he was the aggressor, as tending to characterize his overt acts and throw light upon the question whether they were sufficient to justify the killing.

Instruction No. 26 conflicts with instruction No. 27. The latter instruction reads thus: "The jury are instructed that they may take into consideration, in arriving at their verdict, any threats that the deceased may have made against the defendant if they believe such threats were made, for the purpose of enabling them to arrive at the state of mind of the defendant, and for the purpose of illustrating his conduct and motives in connection with the other evidence in the case, and for the purpose, likewise, of showing the animus of the deceased and his motives." To this instruction the defendant urges no objection. By it the jury were in effect told that any threats which had been made by the decedent against the defendant might be taken into consideration with the other evidence in the case for the purpose of illustrating his motives, conduct and state of mind at the time of the killing, and for the purpose also of showing the animus and motives of the decedent, thus charging the jury that evidence of antecedent threats were to be considered, not independently of but in connection with, all the other evidence in the case, including that touching the conduct and

acts of the decedent at the time of the killing. In our opinion the two instructions are irreconcilably in conflict, and it is impossible to determine which the jury followed. It is not unlikely that the jury understood the latter instruction as modifying the former, nor is it improbable that the jury interpreted the former as meaning what it should have expressed; but we cannot declare that they did either. An error is presumptively prejudicial to the defeated party, and the presumption is rebutted only when it appears that it either was not or could not have been injurious. The jury may have been, and the presumption is that they were, misled by the instruction of which complaint is made. This is the rule in civil cases (*Parrin* v. *Montana Central Railway Co.,* 22 Mont. 290, 56 Pac. 315), and for the like or a stronger reason is it the rule in criminal cases.

For the error adverted to there must be a reversal. As the cause will be remanded, we shall call attention to such other questions as require notice and are likely to arise on a new trial.

2. "The case was a proper one to submit to the jury with instructions upon murder and manslaughter." (*State* v. *Shadwell, supra.*) There was evidence tending to prove the defendant guilty of murder of the first degree; there was evidence tending to prove his guilt of murder of the second degree; and there was evidence the tendency of which was to prove him guilty of manslaughter. Whenever the evidence warrants it the duty of the court is to instruct the jury upon every offense included in the crime charged. (*State* v. *Calder,* 23 Mont. 504, 59 Pac. 903; *State* v. *Fisher,* 23 Mont. 540, 59 Pac. 919; *State* v. *Howell,* 26 Mont. 3, 66 Pac. 291.) The opinion in *State* v. *Brooks,* 23 Montana, 146-159, 57 Pacific Reporter, 1038, may, if not read as a whole, convey the impression that the omission of a charge upon manslaughter is error without prejudice when the jury upon sufficient evidence find the defendant guilty of murder, there being also evidence tending to prove manslaughter; but the opinion is not so to be understood, for in that case there was no room for a verdict of manslaughter, the killing having been done in malice aforethought or by an insane man.

Nor do we agree with the contention of the attorney general that because in the case at bar the defendant endeavored to show that the killing was done in necessary self-defense, an instruction that he might be convicted of manslaughter was unnecessary. That the defendant contended that he acted in self-defense and, therefore, that the homicide was justifiable, did not make it the duty of the jury to convict of murder or acquit altogether. If from the evidence they believed him guilty of manslaughter, they should have so found notwithstanding his plea of self-defense. The mere fact that the defendant insisted, by evidence or otherwise, that he was justified in the killing, could not relieve the court and jury of considering the crime of manslaughter when there was evidence tending to prove its commission. (See *State* v. *Calder*, 23 Mont. 520, 59 Pac. 903.) It might as well be said that on a charge of grand larceny the defendant, because he denies any theft whatever, must, as matter of law either be acquitted or be found guilty of that grade of offense only, though there is evidence tending to prove petit larceny; and that if such lower grade only be proved, the jury must nevertheless convict of grand larceny for the reason that the defendant admitted the taking but asserted title to the property.

Murder in each of its degrees and manslaughter were defined in the charge, and the punishment for each was stated; but nowhere did the court expressly advise the jury that they might find the defendant guilty of manslaughter. The jury were instructed, in the language of Section 2145 of the Penal Code, that whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty. Manslaughter is not distinguished into degrees. The only crime that the charge mentioned which is divided into degrees, is murder. Manslaughter is not a degree of murder, although it is a grade of criminal homicide. The elements necessary to constitute the crime of manslaughter are included in the crime of murder, but, as we have said, manslaughter is not a degree of murder. It is possible, though not

probable, that the jury may not have understood that the defendant might be convicted of manslaughter. Without deciding whether or not the omission to instruct the jury that they might find a verdict of manslaughter was erroneous, we suggest that upon a new trial the omission be supplied. It is always the safer practice to direct the jury explicitly with reference to the verdicts which it is within their province to return.

3. One Anderson, a witness for the state, on cross-examination testified that he was present when O'Connor was killed and had been in the room with the defendant and O'Connor during the night on which the homicide occurred; that he had observed the manner of O'Connor, and that he was abusive toward different persons during the night. He was then asked the question: "Of what did that abusive conduct consist?" The witness answered: "I seen him wring a fellow's nose there; he was abusive—", whereupon he was interrupted by the judge of the court, who remarked: "This is not proper evidence," to which the defendant excepted. Immediately thereafter the witness was permitted to answer the question fully. When this case was here on the first appeal we said: "Now, suppose his conduct was boisterous; that his rage towards others was deseprate, or his temper was ferocious, and vented itself in fighting, abusing and terrifying others who came into the saloon just before the homicide; and that the defendant observed this manner towards others. Would it not be relevant to the question of the reason of defendant's belief, if he had one, that the attack he says O'Connor made upon him when he killed him was to do him great bodily harm? We think it would, and that, therefore, what transpired in defendant's presence on the night of the killing was proper, even though it involved the conduct of the deceased towards others." (*State v. Shadwell*, 22 Mont. 573, 57 Pac. 286.) We deem it unnecessary to decide whether there was error in the remark of the judge if heard by the jury, and if so whether it was subsequently cured. Having called attention to the matter we assume that any question concerning it will, if possible, be avoided on a new trial.

4.   Between the first and second trials, one Barrett, who had been examined as a witness for the defendant, died.   On the second trial the defendant asked to read to the jury the testimony of the witness.   The request was granted and the official stenographer read the testimony.   At the first trial the court, on motion of counsel for the state, struck out the testimony of Barrett with respect to the conduct of O'Connor towards any one but the defendant, and this ruling of the court appeared in the report of Barrett's testimony as read by the stenographer on the second trial.   But at the second trial no objection was made or exception reserved with respect to the matter stricken out upon the first trial; nor was the attention of the court directed thereto by counsel for either party.   The ruling made upon the first trial and the defendant's exception thereto are not equivalent to a ruling and exception at the second trial.   If the defendant desired to have the action of the court upon the first trial excluded from the jury he should have asked that the stenographer be directed to omit it when reading the testimony, or failing that, he should have prayed the court for an instruction in that respect.   If there was error, the defendant waived it by failing to assert his rights.   Errors not excepted to in the court below cannot be reviewed on appeal.

The foregoing are all the matters of sufficient importance to require comment.   Because of the error in instruction No. 26, the judgment and order appealed from are reversed and the cause is remanded for a new trial.   Let the *remittitur* issue forthwith.

*Reversed and remanded.*