STATE, RESPONDENT, v. McGOWAN, APPELLANT.

(No. 2,469.)

(Submitted January 15, 1908. Decided January 25, 1908.)

[93 Pac. 552.]

*Criminal Law—Homicide—Information—Surplusage—Evidence —Admissibility—County Attorney — Misconduct — Instructions—Insanity.*

Homicide—Information—Sufficiency.
1. If a person of common understanding would, from the reading of an information, know that the defendant in a given case was charged with murder in the first degree, the defendant will be presumed to have had a like knowledge and be held not to have been prejudiced by the use of peculiar phraseology in it.

Same—Information—Surplusage.
2. Superfluous words or sentences inserted in an information charging crime may be treated as surplusage and disregarded, if, without such words and sentences, it sufficiently charges the offense alleged to have been committed.

Same—Information—Sufficiency.
3. Allegations sufficient for a common-law indictment for murder suffice for an information under the Code.

Same—Information—Surplusage.
4. *Held*, that an information charging that defendant feloniously, willfully, deliberately, premeditatedly and of his malice aforethought made an assault with a gun, etc., loaded with gunpowder and leaden bullets, etc., "thereby, and by thus striking said deceased," etc., but which, while attempting to allege that the gun was discharged by the defendant at and upon deceased, failed of its purpose owing to faulty grammatical construction, was nevertheless sufficient, since the matter relating to the discharge of the gun was surplusage.

Same—Evidence—Admissibility.
5. Where the defense interposed to a charge of murder was insanity, alleged error in the admission of certain shells, taken from the gun with which the crime was said to have been committed, claimed not to have been properly identified and not to be in the same condition as when taken from the gun, was harmless, in view of the offer of the court to defendant's counsel to examine the witness on the subject, which privilege was not taken advantage of, and where, on cross-examination of the witness, no further questions were asked him on the matter.

Same—Evidence—Alias.
6. Nor was the defendant in the above action prejudiced by a ruling of the court refusing permission to prove by certain witnesses that the deceased went by another name than that by which he was known at the time he was killed, where later such fact was brought to the attention of the jury by another witness.

Same—County Attorney—Misconduct.

7. The county attorney, in a prosecution for homicide, asked a witness whether he had a conversation with deceased a short time prior to the killing, in which deceased accused defendant of the crime of larceny. The court not only sustained an objection to the question, but instructed the jury to disregard it. The county attorney thereafter did not persist in propounding incompetent questions. *Held*, that no prejudicial error resulted from putting the question.

Same—Witnesses—Impeachment—Laying of Proper Foundation.

8. Where, in a homicide case, a witness for accused testified as to the conduct of decedent and the wife of the accused, while at the hotel of the witness, and the witness on cross-examination denied having told the county attorney that she knew nothing about the case, or about decedent and defendant's wife, except that they came there often for supper, but stated that she had told the county attorney that she knew nothing about the case that would help the state, and that, if she said that accused was jealous of decedent and that there was nothing wrong between decedent and accused's wife, she did not remember it, a proper foundation was laid for the admission of evidence that the witness made the statements that she denied making or denied having any remembrance of.

Same—Exclusion of Evidence—Offer of Proof.

9. Where, in a homicide case, an officer, testifying for the state, deposed that he was not friendly with decedent, an objection to a question, asked on cross-examination, whether the officer had had a warrant for the arrest of decedent which he had not served, was properly sustained, in the absence of an offer of proof showing feeling on the part of the witness, assuming that his feeling in the matter was a proper subject of inquiry.

Same—Evidence—Admissibility.

10. Where, in a homicide case, the issue was whether accused had been rendered insane by reason of deceased having been intimate with the wife of accused, it was competent to inquire into the intimacy and sacredness of the relations existing between accused and his wife, as bearing on the probability of defendant becoming crazed by the misconduct of decedent and the wife of accused.

Same—Language of Court—Harmless Error.

11. Prejudicial error did not result to one on trial for homicide, in which the defense was that accused had become insane by reason of decedent and accused's wife having maintained intimate relations, and where the evidence showed that accused and his wife maintained separate establishments, had divided a part of the property, and had arranged to divide the balance after a specified time, from the language of the court in designating the arrangement as a contract of separation. Though technically incorrect, it was not ground for reversal.

Same—Instructions—Definition of Murder.

12. Where the jury, in a capital case, had been instructed on the definition of murder, it was not necessary to again charge in a later instruction, which told them that if they found that accused had murdered decedent, and they did not find him guilty of murder in the first degree, they should find him guilty of murder in the second degree, that the word "murder" should be construed to mean the offense defined in the Penal Code, as set forth in preceding instructions.

Same—Instructions—Intent.

13. Defendant was not prejudiced by the giving of an instruction on the question of criminal intent, which, among other things, stated

that they should determine whether at the time of the killing defendant had the mental capacity to entertain a criminal *act*, the court inadvertently substituting the word "act" for "intent," where, in other instructions, the jury had been repeatedly referred to the distinction between the intent of the defendant and the mere act of killing, and told that in every crime there must exist a union or joint operation of act and intent.

Same—Instructions—Use of Word "Crime."

14.  The use of the word "crime" in an instruction in several instances, among others in the statement that if the jury believed beyond a reasonable doubt that defendant committed "the crime of which he is accused," was not error as indicating that the court had formed the opinion that the necessary elements of the offense had been proven against the defendant, since the jury must have understood that the words "of which he is accused" qualified the term "crime" wherever used in the instruction.

Same—Instructions—Insanity.

15.  The statement in an instruction, given in a trial for homicide, on the subject of insanity, that if defendant was mentally capable of choosing either to do or not to do the act constituting the crime of which he was charged, and of governing his conduct in accordance with such choice, a verdict of guilty should be rendered, even though the jury believed that at the time of the commission of the crime he was not entirely and perfectly sane, was correct.

Same—Instructions—Manslaughter.

16.  Where the evidence in a trial for homicide showed that defendant was either guilty of deliberate murder or not guilty by reason of insanity, which was the only defense interposed, the failure of the court of its own motion to give an instruction on the crime of manslaughter was not error.

*Appeal from District Court, Teton County; J. E. Erickson, Judge.*

DANIEL McGOWAN was convicted of murder in the second degree, and he appeals from the judgment and an order denying him a new trial. Affirmed.

*Mr. J. W. Freeman,* and *Mr. J. G. Bair,* for Appellant.

*Mr. Albert J. Galen,* Attorney General, and *Mr. E. M. Hall,* Assistant Attorney General, for Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

The above-named defendant was convicted in the district court of Teton county of the crime of murder in the second degree, and from a judgment of conviction and an order denying his motion for a new trial he has appealed.

The first contention of his counsel is that the information does not state facts sufficient to constitute a public offense, and is not direct and certain as to the particular circumstances of the offense sought to be charged. These questions were raised by demurrer in the court below. The charging part of the information reads as follows: "That the said Daniel McGowan, of the county of Teton, on the 18th day of March, A. D. 1906, at the county of Teton, in the state of Montana, in and upon one Charles Arnold, then and there being, did feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought make an assault with a certain shotgun, which then and there was loaded with gunpowder and leaden bullets, and by him, the said Daniel McGowan, had and held in both his hands, he, the said Daniel McGowan, did then and there feloniously, willfully, deliberately, premeditatedly, and with his malice aforethought shoot off and discharge at and upon the said Charles Arnold thereby, and by thus striking the said Charles Arnold with the said leaden bullets inflicting on his back mortal wounds, of which said mortal wounds the said Charles Arnold died on the 18th day of March, A. D. 1906, in the county of Teton, state of Montana. And so the said Daniel McGowan, in the manner and form aforesaid, did feloniously, willfully, deliberately, premeditatedly, and with his malice aforethought kill and murder the said Charles Arnold," etc. It will be observed that the charge is not expressly made that the *shotgun* was shot off and discharged at and upon the body of Charles Arnold, and this is the point made by the defendant. It is evident that the pleader omitted the word "which" between the word "hands" and the word "he."

The information being so drawn, it becomes necessary to analyze the charging part thereof, in order to determine whether or not the statutory requirements have been complied with. Section 1832 of the Penal Code provides that an information must contain a statement of the facts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is in-

tended. This statute embodies two provisions: (1) There must be a "statement in   *   *   *   language" and (2) that statement must be so framed as to enable a person of common understanding to know what is intended. Now, we apprehend that, although a person of common understanding may know what is *intended* to be charged, that knowledge must be based upon the language employed; otherwise, the statute is not satisfied.

In this case we undertake to say that a person of common understanding would know that the defendant was charged with murder in the first degree. The defendant is therefore presumed to have had that knowledge, and he was in no way prejudiced by the peculiar phraseology of the information. But, unless the pleader employs language embodying the charge intended to be made, he falls short of compliance with the statute; otherwise, the defendant would be charged by mere inference, which may not be done.

Recurring, then, to the information, and omitting certain parts thereof, we find that defendant is accused of the crime of murder as follows: "That the said Daniel McGowan, on the 18th day of March, 1906,   *   *   *   at the county of Teton and state of Montana, in and upon one Charles Arnold, then and there being, did feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought make an assault with a certain shotgun, which then and there was loaded with gunpowder and leaden bullets, and by him, the said Daniel McGowan, had and held in both his hands,   *   *   *   thereby and by thus striking the said Charles Arnold with the said leaden bullets inflicting on his back mortal wounds, of which said mortal wounds the said Charles Arnold died on the 18th day of March, 1906." We have omitted these words: "He, the said Daniel McGowan, did then, and there feloniously, willfully, deliberately, premeditatedly, and with his malice aforethought, shoot off and discharge at, and upon, the said Charles Arnold."

Is it permissible, under the rules of criminal pleading, to omit the foregoing? It will not be contended that the words last quoted mean anything standing alone, because there is no

allegation there that McGowan discharged any weapon at Ar-
nold. We are to inquire, then, whether in construing the in-
formation we are allowed to treat them as surplusage, and
whether without them the information charges' murder. Sec-
tion 1842 of the Penal Code provides that no information is
insufficient by reason of any defect or imperfection in matter
of form which does not tend to prejudice a substantial right of
the defendant upon its merits. If the information, without
the words last quoted, sufficiently charges murder, then those
words may be treated as surplusage and disregarded. (*State* v.
*Phillips,* 36 Mont. 112, 92 Pac. 299; *State* v. *Mitten,* 36 Mont.
376, 92 Pac. 969.)

The words that we have in mind to disregard involve sim-
ply an attempt to state the manner in which the shotgun was
used in the assault. There is no allegation that the gun was dis-
charged. In the case of *Ray* v. *State,* 108 Tenn. 282-295, 67
S. W. 553, 556, the court said: "It is insisted that the indict-
ment is too vague as to the manner in which the deceased was
killed, because, under the language used in the indictment, he
might have been scared to death, which would not be murder
in the first degree, or he may have been beaten to death. We
think the language is broad enough to convey the idea of a
battery. The indictment in this case charges that the prisoner,
'with a certain dangerous weapon, to wit, a gun, which he in
his hands then and there had and held, in and upon the body
of one Gene Prentiss feloniously, willfully, deliberately, and
premeditatedly, and with malice aforethought did make an as-
sault upon the body of said Gene Prentiss, and did then and
there unlawfully,   *   *   *   by the means and in the manner
aforesaid, kill and murder the said Gene Prentiss, against the
peace and dignity of the state.' The charge that the defendant
did then and there kill and murder him implies battery, and is
sufficient. It is true that murder must be committed by an act
applied to or affecting the person, either directly, as by in-
flicting a wound, or indirectly, as by exposing the person to a
deadly agency or influence, from which death ensues. (*Com-*

*monwealth* **v.** *Webster,* 5 Cush. (Mass.) 295, 52 Am. Dec. 711.)
The working upon the fancy of another, or treating him harshly
or unkindly, by which he dies of fear or grief, would not con-
stitute this offense.  (*State* v. *Turner,* Wright (Ohio), 20.)
At common law it was only necessary to charge that A B, on
a certain day and year, feloniously, willfully, and of his malice
aforethought, did kill and murder one C. D.  *  *  *  In an in-
dictment for murder in the first degree, it is not necessary to
state in so many words that the pistol was loaded with powder
and ball, or that the wound was made with the ball; nor is it
necessary to charge that the wound was inflicted with a particular
weapon.''  (See, also, 21 Cyc. 845.)

In the case of *Alexander* v. *State,* 3 Heisk. (Tenn.) 475, it
was held that an indictment for murder which did not specify
the weapon used was good.  The court said: ''The assault re-
cited is not the gravamen of the charge.  That is only induce-
ment to the real charge, which is that of killing and murder-
ing; and, as the assault was followed by killing and murder
as its consequence, it is not necessary to state the weapon with
which the assault was made or the killing consummated.''  The
information in the case at bar is much more specific in its al-
legations than was the indictment in the case last cited.

The supreme court of Georgia has decided that, in an indict-
ment for murder by shooting with a pistol, it is not necessary
to aver that the pistol was loaded with gunpowder and a leaden
ball, or that the fatal wound was inflicted with a ball.  (*Peter-
son* v. *State,* 47 Ga. 524.)

Murder, in this state, is the unlawful killing of a human be-
ing with malice aforethought.  Allegations sufficient for a com-
mon-law indictment for murder are sufficient for an informa-
tion under the statute.  (*Territory* v. *Stears,* 2 Mont. 324; *State*
v. *Lu Sing,* 34 Mont. 31, 85 Pac. 521.)

We are of opinion that this information is sufficient to en-
able a person of common understanding to know what was in-
tended to be charged therein, that that knowledge may be de-
rived from the language employed, and that the defendant was

in no wise prejudiced in any of his rights by the peculiar wording thereof or the employment of words unnecessarily inserted therein.

The next contention urged is that the court erred in admitting in evidence a certain shotgun shell, taken by the witness Connelly from the defendant's gun after the defendant had delivered the gun to a deputy sheriff. After the witness had testified that the shells produced at the trial were the same shells taken from the gun, defendant's counsel objected to the admission in evidence of one of them "as not properly identified," and they now argue that it was not shown that the shell was in the same condition as when taken from the gun. That point was not incorporated in his objection, and was only raised by counsel after the shell had been admitted in evidence, and the county attorney was about to pass it to the jury, and then only by the statement of counsel as follows: "We object, as the shell is not in the same condition, and may not be the same shell he has testified to." We think there is no merit in the contention, especially in view of the fact that the court expressly stated at the time that, if defendant's counsel so desired, they might examine the witness on the subject, of which privilege they did not see fit to avail themselves. On cross-examination, the witness stated that the shell was not in the same condition as when he saw it the night of the shooting; but no further questions were asked him concerning it, and the matter was allowed to rest there. We see no substance to the controversy, viewed from any standpoint, especially in the light of the fact that the defendant did not go upon the witness-stand, there was no denial of the killing, and the defense was insanity.

Defendant complains that he was not allowed to prove by the witnesses Stewart and Duffy that the deceased went by, and was known by, another name than Charles Arnold. Even though this ruling of the trial court may have been error, which we do not decide, no harm was done, because the witness Cook testified that Arnold was also known by the name of Webber.

The county attorney asked the witness Lea the following question: "Did you have a conversation with Mr. Chas. Arnold a few months, or a short time, before he was shot, in which he accused McGowan of the crime of grand larceny?" The court not only sustained the defendant's objection to the question, but instructed the jury to disregard it in arriving at their verdict. There was no persistence on the part of counsel for the state in propounding incompetent questions; and it does not appear from the record that any effort was made to convey information to the jury through the medium of irrelevant interrogatories. Rather, the question appears to have been propounded in good faith, counsel urging that it was competent as bearing upon defendant's motive in killing deceased. The court, with abundance of caution in the protection of defendant's rights, told the jury not to consider the question, and we think no prejudice resulted.

On the part of the defense there was testimony tending to show that the deceased, for some time prior to his death, had maintained illicit relations with the defendant's wife, and had frequently been discovered in her company under such circumstances as to leave no doubt that they were together for the purpose of sexual intercourse. Certain witnesses also testified that the deceased had attempted to hire them to kill the defendant. All of these matters were communicated to the defendant prior to the homicide. It appeared, also, that for some time prior to the killing of Arnold, Mrs. McGowan and her three children lived at the town of Cut Bank, in Teton county, while the defendant lived on his ranch, some miles from the town, only coming to the house occupied by his wife every Saturday, when he would stay over Sunday, and sometimes two or three days longer. A witness, Mrs. Cook, testified for the defendant as to certain acts of the deceased and Mrs. McGowan while at the hotel of the witness at Cut Bank. On cross-examination she said: "I didn't tell Mr. Cole (the county attorney) that I knew nothing about this case whatever, or about Arnold and Mrs. McGowan, except that they came there often

for supper. I told him I knew nothing about this case that would help the state. If I said at that time that Mrs. McGowan had said to me that Dan was jealous of Charley, but there was nothing wrong between them, I don't remember it." In rebuttal, over defendant's objection, the county attorney testified that Mrs. Cook did make the statements that she denied making or having any remembrance of. It appears that the proper foundation was laid for these impeaching questions, and that the subject matter was material. We find no error in the ruling of the court on this objection.

Robert S. Stewart, a deputy sheriff, testified for the state, and in the course of his testimony stated that he was not very friendly with Arnold. Thereupon defendant's counsel asked him: "Is it not a fact that for some time previous to March 17th you had a warrant for his arrest which you did not serve?" The court sustained an objection to the question, and the ruling is assigned as error. Assuming that it was proper to inquire as to the feeling of the witness for or against either the defendant or the deceased, still this question, in itself, did not show to the trial court that the answer would bear upon that subject, and the court properly ruled thereon. Had the defendant placed the same construction upon the inquiry that he now does, he should either have amended his question by incorporating therein the presumed reason for withholding the service of the warrant, or have made an offer of proof covering the point in such a way that the court might intelligently rule thereon.

The state, also in rebuttal, proved, identified, and offered in evidence a paper writing, reading as follows:

"Cut Bank, Mont.

"Dan McGowan, of Cut Bank, Montana, a rancher, and Elisa McGowan, his wife, of Cut Bank, Montana, have agreed together, at Cut Bank, Mont., on this 12th day of December, 1905, and do hereby promise and agree to and with each other, as follows: Dan McGowan, in consideration of the promise and mutual agreement made by Elisa McGowan, does hereby grant,

bargain, and sell all of his interest in the following described personal property, to wit: [Here follows description of certain cattle and horses, and also one wagon and set of double harness.] And Elisa McGowan, for and in consideration of the above agreement, does hereby sell, assign, and transfer all of her interest in the following described personal property, to wit: [Here follows description of certain other cattle and horses and one wagon and team harness.] It being further agreed by and between the parties above mentioned that Elisa McGowan is to have the use of their house in Cut Bank, and that Dan McGowan is and agrees to allow Elisa McGowan 10 dollars for the support of the children she has in her care each month for a period of five months, and after that period a further agreement is to be made by and between Dan McGowan and Elisa McGowan as to the dividing of the balance of their joint personal property and improvements."

The writing bears the following certificate of acknowledgment, signed by a notary public: "On this 12th day of December, 1905, before me, the undersigned, a notary public in and for the county of Teton, personally appeared Dan McGowan and Elisa McGowan and acknowledged to me that they did agree to the foregoing division of the personal property as set forth in the foregoing agreement and that is their own free and voluntary act."

In overruling defendant's objection to this paper, the court said: "I think I will let it go to the jury. It shows that they were living under this contract of separation. That might throw some light upon the question to the jury whether or not the defendant was sane or insane. I think, taken with all the other evidence, it is perhaps competent." It is now contended that the remark of the court, in characterizing the document as a contract of separation, was prejudicial to the defendant. The paper was also objected to as incompetent rebuttal evidence; but we see no force in the objection. The issue being tried was whether the defendant had been rendered insane by the assault of the deceased upon the sanctity of his domestic relations.

It was certainly competent to inquire as to how intimate and sacred those relations were in fact, as bearing upon the liability or probability of defendant's becoming crazed by their destruction; and in view of the fact that the testimony shows that defendant and his wife maintained separate establishments— had, in fact, divided a part of their personal property, and arranged to divide the balance after five months—we find no prejudice to the defendant in the remark of the court, even though the paper was not technically a contract of separation.

Defendant complains of a part of instruction No. 10. It reads thus: "If you find from the evidence beyond a reasonable doubt that the defendant murdered Charles Arnold, and you do not find him guilty of murder in the first degree, you should find him guilty of murder in the second degree. Murder in the second degree is the unlawful killing of a human being with malice aforethought, either express or implied, where the killing is not done deliberately, or with some degree of coolness, or in any one of the ways specified in the definition of murder in the first degree." It is said that the jury should have been told in the same instruction that the word "murder" must be construed to mean the offense defined in the Code, as set forth in other instructions. We think it would be a sad commentary upon our jury system and upon the intelligence of the good citizens of Teton county if we should hold that there was any possibility that this jury did not understand that the defendant was being tried for the crime set forth in the information and as defined by the court, and we, therefore, refuse to so hold.

Instruction No. 24 is objected to. It reads as follows: "You are instructed that in order to be criminally responsible, a person must have intelligence and capacity to have criminal intent and purpose, and if his mental powers are so deficient that he has no will, or no conscience, or no controlling mental power, or if, from the overwhelming violence of mental disease, his intellectual power is for the time obliterated, so that he has not the power or volition to choose to do right and refrain from

doing wrong, he is not criminally responsible; the question to be determined being whether, at the time of the killing, he had the mental capacity to entertain a criminal *act*, and whether, in point of fact, he did entertain it." It will be observed that in the latter part of the instruction the court inadvertently used the word "act," instead of the word "intent." We cannot imagine that the defendant was in any way prejudiced by this instruction, reading all of it. The jury must have known that the court referred to the intent with which the act was committed. The court, in other instructions, repeatedly referred to the intent of the defendant as shown by the evidence, as distinguished from the mere act of killing, and told them that in every crime there must exist a union or joint operation of act and intent. It would serve no useful purpose to quote these instructions, as no complaint is made of them. We are satisfied that the giving of this instruction was not reversible error, and that, as the same reads, it did defendant no harm.

Defendant complains of instruction No. 25, which reads as follows: "You are instructed that if, from all the evidence in the case, you believe beyond a reasonable doubt that the defendant committed the crime of which he is accused in manner and form as charged in the information, and that at the time of the commission of such crime the defendant knew that it was wrong to commit such crime, and was mentally capable of choosing either to do or not to do the act or acts constituting such crime, and of governing his conduct in accordance with such choice, then it is your duty, under the law, to find him guilty, even though you should believe from the evidence that at the time of the commission of the crime he was not entirely and perfectly sane." It is said that instead of the word "crime," the court should have employed some such word as "homicide." The defendant's counsel maintain that the use of the word "crime" conveyed to the jury the notion that the court was of opinion that the defendant was guilty of the crime charged against him. While cases may, and sometimes do, arise in which the use of the word "crime" might possibly be con-

strued by the jury as indicating that the court had formed the opinion that the necessary elements of the offense had already been proven against the defendant on trial, we do not think that situation obtained in this case. It is necessary for the trial court, in instructing the jury, to refer to the nature of the accusation made by the state against the defendant, and we think the use of the phrase first employed in this instruction, to wit, "the crime of which he is accused," was appropriate, and that the jury must have understood that the words "of which he is accused" qualified the word "crime" all through the instruction. Counsel also suggest that the words "even though you should believe from the evidence that at the time of the commission of the crime he was not entirely and perfectly sane" are, to quote the language of their brief, "wrong and prejudicial to the rights of the defendant." The use of this language is expressly approved in *State* v. *Peel,* 23 Mont. 358-368, 75 Am. St. Rep. 529, 59 Pac. 169.

The last assignment of error set forth in the brief of· defendant's counsel relates to the failure of the court of its own motion to submit to the jury the question whether the defendant was guilty of manslaughter. No request was made for such an instruction. So far as the evidence shows, there had been no meeting between defendant and deceased for several days prior to the shooting. Arnold was shot in the back, through the glass of a window of a hotel, while he was sitting quietly at the dining-table waiting for food to be served to him. Soon after the occurrence the defendant admitted to several witnesses that he did the shooting. One witness said to him that it was a dirty trick to shoot a man in the back, to which remark defendant replied that he could not take a chance with this man; that he was afraid to. He also told the deputy sheriff that he "got the son of a gun"; and to the witness Woods he said, "I have killed him, and I am not sorry for it." The entire defense was devoted to the question of defendant's mental condition. Under these circumstances, we do not think the court would have been justified in instructing the jury with refer-

ence to manslaughter. The defendant was either guilty of murder, or not guilty by reason of insanity. The only effect of an instruction on manslaughter would have been to give the jury an opportunity to return a compromise verdict, probably meaningless from any logical standpoint, and simply a sort of ''splitting the difference'' between those jurors who thought the defendant guilty and those who were in favor of acquittal. Such a verdict neither does justice to the defendant nor the state. As was said by this court in *State* v. *Shadwell,* 26 Mont. 52, 66 Pac. 508, whenever the evidence warrants it, it is the duty of the court to instruct the jury upon every offense included in the crime charged. This rule applies to cases, should any arise, where the trial court has a reasonable doubt about the propriety of such instruction, in which event the instruction should be given. It naturally follows that where the evidence does not warrant and the court has no reasonable doubt, such instruction should not be given, as the giving would only tend to confuse the jury and obstruct the ends of justice.

The record in this case shows that the defendant had a fair and impartial trial. The judgment and order appealed from are therefore affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.