STATE OF MONTANA, Plaintiff and Respondent, v. RAYMOND BOARD, Defendant and Appellant.

No. 9904.

Submitted January 8, 1959. Decided March 17, 1959.

Rehearing Denied April 27, 1959.

337 Pac. (2d) 924.

140

John F. Bayuk, Conrad, John W. Bonner, Helena, for appellant. John W. Bonner, argued orally.

Forrest H. Anderson, Atty. Gen., James A. Robischon, Asst. Atty. Gen., Helena, Richard V. Bottomly, Great Falls, for respondent. James A. Robischon, Asst. Atty. Gen., argued orally.

THE HONORABLE W. W. LESSLEY, District Judge:

. The appellant, Raymond Board, was convicted in the district court for Cascade County of the crime of burglary in the first

degree. He appeals from the judgment of conviction and from the order denying him a new trial.

The Arrowhead Motel is located in the 500 Block of Tenth Avenue South in Great Falls, Montana. On August 6, 1957, James R. Reynolds occupied Unit 4 of that motel. He had returned about 12:30, locked the door of his unit, emptied the contents of his pockets on the desk near his bed (described as generally three credit cards, social security card, and approximately Fifty Dollars in cash of one $10 bill and the rest $5 bills). He went to sleep; he awakened to see, scarcely an arm's length away, a man standing by the desk. He saw the profile of the intruder, his dress—loose sport jacket, and big cowboy hat. The burglar was standing with his hand on the desk. By the light, from the well-lighted outside court, which came through the window of his unit, he was able to see clearly the appellant. Reynolds lay still, watching the burglar; as soon as he had left, Reynolds arose from bed, ran over to the door of his unit, and looked outside. There he saw two men; one was the night intruder with the white, large straw cowboy hat, a two-tone checkered sport jacket; his companion was a shorter man, heavy-set, with gray hat and blue shirt. He heard them talking, and in the courtyard he saw a third man sitting behind the steering wheel of a black and white 1957 Plymouth car with the motor running. The car drove out; Reynolds looked at the desk and saw his wallet was gone. All of this occurred, as it was starting to get light, and not later than 4:00 o'clock in the early hours of August 7, 1957.

Two hours later at the police station, in Great Falls, Reynolds saw and identified the appellant Board and the shorter man, Bean. He also saw in the parking lot, the Plymouth car, and voluntarily told the police officer it was the same car he saw that night at the motel; the record shows it to have been the car the appellant Board and Bean and Gall were in at the time they were arrested by the Great Falls police.

Money, in the form of $5 bills, was found in the sock of appellant, as he was searched at the station.

142

· All assignments of error worthy of discussion may be disposed of in five general propositions, namely: (1) Is the amended information so ambiguous and unintelligible as to be demurrable? (2) Should appellant's motion for change of place of trial have been granted? (3) Was sufficient proof of burglary in the first degree? (4) Did the court commit reversible errors during the course of the trial? And finally, (5) did the court misdirect the jury in matters of law?

As to the first proposition, we apply the accepted test of a sufficient information; those tests are found in section 94-6403, R.C.M. 1947. The pertinent portion of the amended information is as follows:

"That at the County of Cascade, State of Montana, on or about the seventh day of August, A.D., 1957, and before the filing of this Information, said defendants then and there being, did then and there commit the crime of Burglary In The First Degree, in that the said defendants, then and there being, then and there did, wilfully, wrongfully, unlawfully, feloniously intentionally and burglariously, with the intent in them, the said defendants then and there and therein, to commit larceny in the night time, enter into that certain building, unit number 4, Arrowhead Motel, located at 510 Tenth Avenue South, Great Falls, Montana, then and there the property of Mr. Lorne E. Harris and Ben F. Stephens (property in unit number 4, consisting of a wallet containing about fifty dollars ($50), owned by James R. Reynolds, 900 South Pearson, Glendive, Montana."

Our test is declaratory of the common law, and finds succinct expression in State v. McGowan, 36 Mont. 422, 93 Pac. 552. That case speaks of our statute, as embodying two provisions as tests; this is true, but application results in the venerable, "common understanding rule." In other words we test the language used by this rule, "would a person of common understanding know what is intended to be charged?"

We can in many cases, and surely in this instance, admit the ineptness, and lack of preciseness of the language used, but when that has been said we return to the aim set in our statute and

expressed in our cases—would a person of common understanding know what was intended? Here it is clear, under the language used, that an ordinary person would know that the crime charged was burglary in the first degree.

The statement in parenthesis is inelegant and it wounds the ██ careful craftsman, but it does not charge nor seek to charge larceny. At its best it is descriptive of the property allegedly taken from the motel and concerned with intent to commit larceny. At its worst it is surplusage. It is elementary law that superfluity in an Information does not vitiate. State v. McGowan, supra, 36 Mont. 422, 93 Pac. 552; State v. Phillips, 36 Mont. 112, 92 Pac. 299.

The court acted properly when it overruled appellant's demurrer to the Amended Information.

Considering the second proposition, we deduce from the applicable cases, this general rule. Application for change of place of trial is addressed to the sound discretion of the trial court, and, unless an abuse of this power is shown, its ruling will not be disturbed. State v. Davis, 60 Mont. 426, 199 Pac. 421.

Indicia of this denial of fair trial, resulting from prejudicial ██ publicity, as gleaned from our law, seems to be: Arousing feelings of the community, threat to personal safety of defendant, established opinion of members of the community as to the guilt of the accused, news articles beyond the objectivity of news printing and dissemination, State v. Dryman, 127 Mont. 579, 269 Pac. (2d) 796, and difficulty or failure in securing a fair, impartial jury from the community in which the news articles appeared, State v. Davis, supra, 60 Mont. 426, 199 Pac. 421; State v. Bess, 60 Mont. 558, 199 Pac. 426.

Our court looks for a chain reaction. It starts with the basic ██ premise that the accused is entitled to a fair trial. Next it checks the publicity complained of, as to its contents and more important, as to its total effect upon the "fair trial right." Further, it looks at effects in the form of the discriminating marks we have discussed. Finally, it objectively considers the

end result—was a fair trial denied as a result of the publicity and its effects? If its findings are negative it refuses to find abuse of discretion on the part of the trial court.

Following that procedure here, we find no abuse, and therefore no reversible error in the trial court's denial of a change of place of trial to the appellant.

When we consider the third proposition, we start with two ▮ accepted statements of law in this state. The phrase "nighttime," as used in this chapter, means the period between sunset and sunrise. Section 94-905, R.C.M. 1947. "But when the pleader, as in this case, makes the specific charge of a burglary in the nighttime * * * he must be held to proof of the charge as made." State v. Copenhaver, 35 Mont. 342, 89 Pac. 61, 62. The time here was given a definite terminus by Reynolds under cross-examination:

"Q. What time would that be in the morning, would you say? A. That was—that was right around four o'clock.

"Q. About four o'clock in the morning? A. Uh-huh.

"Q. Could it have been later? A. No."

Further the question of time is definitely anchored in the sequence of events of the instant case by the testimony of the following police officers:

Officer Calderhead: "Q. Do you recall what time it was? A. Approximately four A. M."

Officer Loser: "Q. Do you remember approximately what time it was? A. It was approximately four o'clock."

Officer McPherson: "A. Yes. I was making a lunch relief for the dispatcher around 3:30, and I was answering the telephone calls that come in, and I received a call from Mr. Reynolds."

The evidence here clearly comes within the requirement set ▮ out in State v. Fitzpatrick, 125 Mont. 448, 239 Pac. (2d) 529, 531. There, in the words of Justice Freebourn, the record showed no "substantial evidence to prove when the burglary occurred, and there was a total failure on the part of the state

to prove such burglary was committed in the nighttime." The exact contrary exists here.

We consider, briefly, the alleged reversible errors of the lower court during the progress of the trial. Considered under the fourth proposition they are three in number.

Was the admission on direct, of evidence of bribery error? ▮ We think not. It was so allowed, after defendant on cross-examination, placed in record an affidavit and letter, that pointedly contradicted the testimony of Reynolds, as he gave it on direct. Its purpose was to contradict; it was new material; therefore the state, as permitted under section 93-1901-10, R.C.M. 1947, could properly explain the affidavit and letter, even though it might lead into the question of bribery. To impeach is drastic surgery; explanation must not be denied on the ground it may go too far, or have prejudicial overtones.

Our law is clear on this. See section 93-1901-12, R.C.M. ▮ 1947. In State v. Keays, 97 Mont. 404, 34 Pac. (2d) 855, 861, this court, quoting from 5 Jones on Evidence, p. 232, stated: " 'Since the principal object of the rule requiring the cross-examiner to lay the foundation for impeachment by interrogating the witness as to his former statements is to prevent injustice to the witness by giving him an oppoortunity to recollect the facts and to explain any apparent inconsistency, it follows that the opportunity should not be denied on the reexamination. The witness may then be allowed to reaffirm or explain such statements, their meaning and design, *and to give the circumstances and influences under which they were made'.*" Emphasis supplied. See also State v. Heaston, 109 Mont. 303, 97 Pac. (2d) 330.

Here the lower court was most diligent to keep the redirect in bounds; the redirect dealt with new material brought forth by defendant in cross; the evidence of bribery on redirect was relevant, natural, close and proper. You may not parry with sharpened blade in cross and expect only a sheathed blade in return.

The lower court permitted the introduction of evidence con-

 cerning the theft of Reynolds' wallet. Appellant claims this as reversible error. He bottoms his argument, primarily, on the ground that since the information alleged larceny, it must therefore be proved; and further, that evidence here of the wallet falls far short of such proof, and is therefore prejudicial. We have considered his basic premise in the early part of this opinion and found it without merit; therefore the argument based thereon falls.

An objective appraisal shows the evidence allowed in, tends to prove the wallet in the motel, its disappearance at the time the intruder was present, and that later defendant Board had money on him (and others) of the approximate amount and kind that was in the wallet. This evidence was admissible and competent; it could be considered by the jury on the question of intent to commit larceny. It was not the sole support of the State's case, but was an integral part. See 12 C.J.S. Burglary, section 50, page 722; State v. Kinghorn, 109 Mont. 22, 93 Pac. (2d) 964; and State v. Hampton, Mo. 1955, 275 S.W. (2d) 356. There was no error here.

Did the county attorney commit reversible error by with- holding evidence? The alleged withholding as claimed by the appellant, is the failure of the State to introduce, by its witness, evidence that Board's fingerprints were not found at the scene of the crime. To state appellant's alleged error is to answer it. No law on this precise point is cited by counsel, nor can we find any. His cases and general statements of the obligation and duties of prosecuting attorneys are true. But the transcript here reveals no abuse of these high duties by the county attorney in the case before us.

Finally, did the court misdirect the jury in matters of law? We set out in full court's Instruction No. 13:

"You are instructed that in every crime or public offense there must exist a union or joint operation of act and intent. The intent or intention is a state of mind and every sane person is presumed to intend the natural and probable consequences of his act and such intent may be inferred from the acts of the

person charged with crime as well as by his words or declarations. It is not necessary to a conviction that an express intention be proved. It may be manifested by circumstances connected with perpetration of the offense without any positive testimony as to express intent.''

Appellant objected to this instruction, which was given over his objection. His error is predicated on the argument that burglary requires specific intent to commit larceny or any felony, section 94-901, R.C.M. 1947; further, that the first part of the instruction is based on a presumption of intent; and that the last part indicates that an express intention need not be proved.

The fatal portion of the instruction, given in the case relied upon by appellant, State v. Garney, 122 Mont. 491, 493, 207 Pac. (2d) 506, 508, is: ''And under the laws of this state, when an unlawful act is shown to have been committed with a malicious purpose of injuring another, it is presumed to have been committed with a malicious and guilty intent.'' This portion infects the entire instruction and is fatal error if given in a case where specific intent is the very gist of the offense. The parent case on this point, State v. Schaefer, 35 Mont. 217, 221, 88 Pac. 792, holds as error the very wording cited in the Garney case and comments: ''Such an instruction may properly be given in a case where the charge and facts warrant, but, when a defendant is on trial for a crime involving a specific intent as the *gist* of the offense, we think it might mislead a jury, and that the portions complained of should be omitted.''

Here the court did not tell the jury that no specific intent need be proved; in the Schaefer and Garney cases, relied upon by the appellant, it did just that. Here at most, it merely told the jury that an express intention need not be proved. There is a wide difference between specific and express intent. Our court speaking unanimously through Chief Justice Adair in State v. Madden, 128 Mont. 408, 176 Pac. (2d) 974, 979, quoted with approval from an Illinois case, Crosby v. People, 137 Ill. 325, 27 N.E. 49, stating: '' 'It is not necessary to a conviction,

however, that an express intention need be proved'." This is what this instruction stated; further, it does not have the fatal disability of the instructions in the Schaefer and Garney cases of directing no specific intent was necessary.

There is no error here.

We agree that State's Instruction No. 8, defining "wilfully" ▌ need not, and should not, have been given in the instant case. But we do not accept appellant's further contention, that because of that error has been committed. Nor do we agree that its effect is to erase "intent" from the consideration of the jury. Instructions 8 and 9, definitely instruct the jury, that an element of the crime charged is the intent to commit petit or grand larceny; further, Instruction No. 7 charge the jury that to convict, the State must prove every material fact necessary to constitute such a crime, by competent evidence and beyond a reasonable doubt. Instruction No. 8 while superfluous, and should not have been given, was not prejudicial. State v. Souhrada, 122 Mont. 377, 204 Pac. (2d) 792.

The other alleged errors discussed under the general proposition of misdirection of jury in matters of law are not of sufficient substance to merit separate discussion. We find no error in any of them.

The judgment and order appealed from are affirmed.

MR. JUSTICES ADAIR and CASTLES, and THE HONORABLE VICTOR H. FALL, District Judge, concur.

MR. JUSTICE ANGSTMAN: (concurring).

I concur in the result but not with all that is said in the foregoing opinion.