STATE, RESPONDENT, *v.* NEWMAN, APPELLANT.

(No. 2,302.)

(Submitted October 2, 1906.   Decided October 29, 1906.)

*Criminal   Law—Forgery—Bounty   Certificates—Information—
Evidence—Appeal—Briefs—Instructions—Rules.*

[See, also, syllabus in *In re Terrett, ante,* p. 325.]

Forgery—Information—Insufficiency—Waiver.
1.   Defendant, charged with forgery, entered, a plea of not guilty.
At the trial his counsel objected to the introduction of any testimony
on the ground that the information was indefinite, unintelligible and
uncertain.   *Held,* that defendant, by his plea to the merits, waived
any objection to the information on this ground.

Same—Bounty Certificates—Statutes—County Attorneys.
2.   The district court ruled correctly when it denied a motion of
defendant, on trial for forging a bounty certificate, that the county
attorney be required to state whether the prosecution was proceeding
under section 3078 of the Political Code, which provides that any
person who shall falsely make or counterfeit a bounty certificate shall
be guilty of forgery, or under section 840 of the Penal Code, de-
fining the crime of forgery, there being no rule of law making it in-
cumbent on that officer to make known under what section of the
Code a defendant is being tried.

Same—Appeal—Prejudice.
3.   Where, before the defense of one charged with forging a bounty
certificate was begun, it was definitely stated that the prosecution
was being conducted under section 3078 of the Political Code, de-
fendant was not prejudiced by a ruling theretofore made overruling
his motion that the county attorney be required to state under what
particular section of the Code he was proceeding.

Same—Written Evidence—Original Papers.
4.   An objection to the introduction in evidence of certain bounty
certificates, on the trial of one charged with forgery of such a paper,
on the ground that no proper foundation had been laid, was properly
overruled, where it appeared that the certificates sought to be intro-
duced were originals properly identified.

Criminal Law—Witnesses—Indorsement on Information.
5.   A witness in a criminal prosecution may not be prevented from
testifying because his name was not indorsed on the information,
where it does not appear from the record that the county attorney
knew of the witness at the time he filed the information.

Forgery—Bounty Certificates—Evidence of Other Offenses—When Admis-
sible.
6.   In a prosecution of a bounty inspector for forgery, evidence of
like offenses with relation to certificates other than the one men-
tioned in the information was admissible for the purpose of showing

that a system or general plan had been pursued by accused, a guilty knowledge or criminal intent on his part, and to negative the idea that the particular act for which he was on trial was the result of accident, mistake or inadvertence.

Same—Offer of Proof—Defense—Evidence.

7. Proof offered by defendant, a bounty inspector charged with forging a bounty certificate, for the purpose of showing absence of criminal intent on his part in the transaction complained of, to the effect that he, as a furrier and taxidermist, had purchased a number of skins of wild animals, on which bounty had not been paid, and had prevailed upon another person to include such skins in a certificate issued to such other person, and who then swore that he had killed the whole number of animals represented by the certificate, did not constitute any defense, but showed defendant to be also guilty of subornation of perjury and of a felony in purchasing claims against the state under Penal Code, section 136.

Bounties—Who Entitled Thereto.

8. *Obiter:* Under section 3071 of the Political Code, as amended by Session Laws of 1903, page 166, only the person who kills certain wild animals is entitled to bounty, and by selling the skins of such animals to another he waives his right to the bounty, the person purchasing them acquires no right to bounty, and the state is released from any liability thereon.

Appeal—Briefs—Rules—Instructions.

9. Instructions of which complaint is made by appellant, but which are not set out in his brief in *totidem verbis*, as required by Rule X. paragraph 3, subdivision *b*, of the Rules of the Supreme Court, will not be reviewed.

(MR. JUSTICE MILBURN dissenting.)

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

T. J. NEWMAN was convicted of the crime of forgery, and appeals from the judgment of conviction and from an order denying him a new trial.    Affirmed.

*Mr. Sydney Sanner,* and *Mr. George W. Farr,* for Appellant.

(See brief in *In re Terrett, ante,* p. 325.)

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

T. J. Newman was convicted of the crime of forgery, and has appealed from the judgment, and from an order denying his motion for a new trial.

The information in this case is in all substantial particulars the same as the one heretofore considered by this court in *In re Terrett, ante,* p. 325, 86 Pac. 266. The questions of the insufficiency of the information and the unconstitutionality of section 3078 of the Political Code, and section 3072 thereof, as amended by Chapter XCIV, page 166, of the Laws of 1903, are disposed of by the decision in that case.

At the trial the defendant objected to the introduction of any evidence on the ground that the information is indefinite, unintelligible, and uncertain. But this objection, coming after a plea of not guilty, was of course unavailable. The plea to the merits waived this objection. Defendant then moved the court to require the county attorney to state whether the prosecution was proceeding under section 3078 of the Political Code, or section 840 or 848 of the Penal Code. This motion was overruled. We know of no rule of law which requires the county attorney to state the particular section of the Code under which the defendant is being tried. It seems plain enough, from the information in this case, that it was drawn under section 3078 of the Political Code, and doubtless the trial court thought so. In any event, the defendant could not have been prejudiced by the court's ruling; for, before the defense was commenced, it was definitely stated that the prosecution was being conducted under section 3078, above.

Certain bounty claim certificates were introduced in evidence over the objection of the defendant, and it is urged that the ruling of the trial court was erroneous, for the reason that no proper foundation had been laid. It is said that the state was proceeding upon the assumption that these certificates were public records, while in fact they were not such. But irrespective of whether they were public records, in every instance the certifi-

cate offered was an original, and was properly identified by the parties who made the affidavits, by the county clerk who attached his certificate, and by proof of the signatures of the defendant to the jurats, and to the inspector's certificate.

A witness, J. L. Foster, was permitted to testify for the state, over the objection of the defendant, that his name was not indorsed on the information. It does not appear from the record whether this witness was known to the county attorney at the time the information was filed. Section 1734 of the Penal Code provides: "The county attorney must indorse upon the information at the time of filing the same the names of the witnesses for the state, if known." This section was considered in *State* v. *Sloan,* 22 Mont. 293, 56 Pac. 364, and *State* v. *Schnepel,* 23 Mont. 523, 59 Pac. 927, and the question now raised by defendant, determined by this court adversely to his contention.

The defendant Newman was a bounty inspector in Custer county and was charged with forging a bounty certificate. There is not any conflict in the testimony. S. A. Hotchkiss, a resident of Custer county, took to the defendant, as bounty inspector, three coyote skins, in order to receive the bounty upon them. There seemed, however, to be a well-founded opinion prevalent that, instead of defendant performing the duties of his office, as required by law, he was engaged in trafficking in bounty claims; so that when Hotchkiss took these skins to the defendant, instead of proceeding according to law to secure the bounty, he merely sold to the defendant the bounty claims at a discount of forty-five cents on each, signed in blank the affidavit of the person killing the animals, and an assignment of the claim in blank, and received his money for the claims. The defendant himself solicited one Herman to sign the resident stockgrower's affidavit, and this was done, although Herman says himself that he did not even see the skins. Defendant then filled up the affidavits, and made his own certificate as inspector, in which he certified that Hotchkiss had presented for examination, and that he as such inspector had examined and properly marked, sixteen coyote skins. These papers were then taken to the

county clerk, who certified that Hotchkiss had presented the bounty inspector's certificate that sixteen coyote skins were marked as required by law, although, as a matter of fact, Hotchkiss had not seen the papers from the time he signed them in blank in Newman's place of business, until the time of the trial of this case in the district court. The assignment of the claims which Hotchkiss signed in blank was filled up, and the name of one Etna Western inserted as assignee of Hotchkiss, and a claim of $48 on the state's bounty fund duly presented to the state board of examiners for allowance, although Hotchkiss' claim had amounted to but $9, and this he had sold to the defendant for $7.65.

For the purpose of showing that the insertion of the figure "16" instead of the figure "3" in the inspector's certificate, as designating the number of skins presented by Hotchkiss, was not the result of accident, mistake, or inadvertence, but done *malo animo,* the state, over the objection of defendant, offered evidence to show a general plan or system by which the defendant was operating. The evidence consisted of bounty claim certificates and testimony of witnesses, showing other like transactions by Newman about the same time that the one was had with Hotchkiss. For instance: Homer Lewis presented three coyote skins at Newman's place of business, and, although Newman was not present at all, sold the bounty claims to Newman through Newman's sister, who acted for him, signed an affidavit in blank and a blank assignment of the claims, had his witness sign the resident stockgrower's affidavit in blank, received $2.50 or $2.65 for each skin, and left, not having seen Newman at all. The affidavits of Lewis and his witness were filled up, and Newman attached his jurats as inspector, reciting in one instance that Lewis, and in the other his witness, had subscribed and sworn to the facts set forth in the respective affidavits before him, Newman. Newman then filled up his own certificate as inspector, reciting that Lewis had presented nineteen coyote and three wolf skins, and that he had examined and properly marked the same. The county clerk's certificate was procured, the blank

assignment filled up, and Etna Western named as assignee, and a claim for $72 on the state bounty fund presented for allowance, although Lewis had received less than $8 for his claims, which in any event could not have amounted to more than $9.

John M. Smith went before Newman, signed a blank affidavit as of a person who had killed certain stock destroying animals, the skins of which were then presented to Newman as such inspector, signed in blank an assignment of the claim for bounty, and received $13.65 for doing so, although as a matter of fact Smith had not presented any skins whatever for examination or marking. A resident stockgrower was procured to sign the affidavit, which, by reference to the inspector's certificate, in effect stated that Smith had presented eighteen coyote and two wolf skins, and to the best of the stockgrower's knowledge, information and belief the animals had been killed by Smith within sixty days preceding that date, and in Custer county. Newman then filled up these affidavits, and his own certificate as inspector recited that Smith had in fact presented to him as bounty inspector eighteen coyote and two wolf skins, and that he as such inspector had examined and marked the same as required by law. The county clerk's certificate was procured to be attached, the blank assignment of the claim was filled out, and Etna Western named as assignee, and a claim against the state bounty fund for $64 duly presented.

Charles Hout presented the skins of two coyotes and one wolf to Newman as inspector, signed the affidavit and assignment of the claims in blank, had the stockgrower's affidavit made by one J. H. Daly, received $2.40 for each claim for bounty on the coyote skins, and $4 for the bounty claim of the wolf skin. Newman made out his certificate, as inspector, that Hout had presented fourteen coyote skins and one wolf skin, the assignment of the claims was made out, and Etna Western named as assignee of the claims, the county clerk's certificate procured, and a claim against the state bounty fund for $47 duly presented, though the total amount of Hout's claim was but $11, and this he had sold to the defendant for $8.80.

Ralph Gilmore went before Newman, signed an affidavit as one who had killed certain stock destroying animals, told Newman that he had not any of the skins with him, but had them at his ranch, and would send them to Newman; and it was then agreed between Newman and himself that for whatever number of skins Gilmore did send, Newman would give him credit on account. The stockgrower's affidavit was made by one Hostetter. Gilmore afterward sent up to Newman three coyote skins. The defendant made out his certificate, in which he certified that Gilmore had presented sixteen coyote skins, and that he, as such inspector, had examined and marked the same as required by law. The assignment was filled up, and Etna Western named as assignee of the claim. The county clerk's certificate was procured, and a claim for $48 presented to the state. It does not appear from the record for what amount Gilmore received credit.

The defendant urges that the introduction in evidence of the certificates showing these transactions, particularly the certificates showing the transactions other than the one with Hotchkiss, was error prejudicial to the defendant. With this contention we are not able to agree. It is a well-settled rule of the law of evidence that proof may be made by the state of facts tending to show a uniform course of action recently pursued—a system or plan on the part of the accused, for the purpose of showing guilty knowledge or criminal intent, and to negative the idea that the particular act with respect to which the accused is charged with committing a crime was the result of accident, mistake, or inadvertence. In 12 Cyc. 411, the rule is thus stated: "Where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused, and that the act charged was not the result of accident or inadvertence," and numerous decisions are cited in support of the text. (See, also, 1 Wigmore on Evidence, sec. 304; Underhill on Criminal Evidence, sec. 423.)

The defendant in his own behalf offered to show that

he was a furrier and taxidermist; that while acting as bounty inspector he had purchased from parties who had killed the animals the skins of coyotes and wolves upon which bounty had not been paid; and that by agreement with Hotchkiss he, Newman, had properly marked thirteen coyote skins of his own which he had theretofore purchased, and had included them in his certificate as having been presented to him by Hotchkiss; that his transaction with Hout was had under a like agreement; and that as to the claims of Lewis, Smith and Gilmore, he had not in any wise included in his certificates any "skins which were not bountable in any wise." These offers were made to negative any criminal intent on the part of the defendant, and to show that in fact he did not intend to commit a crime or wrong, or defraud the state or anyone else; and exception is taken to the ruling of the court excluding these offers.

An analysis of these offers shows that, according to the defendant's own statement as contained in the offers, in addition to being guilty of the crime for which he was being tried, he was likewise guilty of subornation of perjury, if he procured Hotchkiss to swear that he, Hotchkiss, had killed sixteen coyotes, and had presented these skins to Newman as bounty inspector, when in fact Hotchkiss had killed but three, and had presented but three skins. (Political Code, sec. 3078.) He was also guilty of a felony in purchasing these claims against the state. (Penal Code, sec. 136.) He was likewise guilty of perpetrating a fraud upon the state in presenting for bounty and procuring the payment of bounty, upon skins for which no bounty could be collected by law. It is perfectly clear from section 3071 of the Political Code, as amended by Act of March 6, 1903 (Laws of 1903, p. 166, Chapter XCIV), that the state's bounty is only given to the party himself who kills a stock destroying animal, and if any such party sold the skin of the animal to Newman, he thereby waived his right to claim the bounty, and from that moment the state was not liable for bounty on such skin. In attempting to collect it, Newman was attempting to defraud the state out of the amount of such bounty. So, instead of defend-

ant's offers of proof tending in the remotest degree to excuse him, they convicted him of numerous other crimes. If the evidence offered had been received, the court must have instructed the jury that the facts which the evidence tended to prove, if considered proved, would not constitute any defense.

Complaint is made of certain instructions given by the court, and of the refusal of the court to give certain other instructions requested by the defendant. None of these instructions are set forth in the brief of appellant, as required by subdivision "*b*," paragraph 3, Rule X, of the Rules of this court (30 Mont. xxxviii, 82 Pac. x), and, under the practice uniformly followed, these assignments will not be considered.

We have examined the other assignments made by appellant, but we do not find anything in them which would justify this court in interfering with the verdict of the jury or the judgment of the court. The evidence is amply sufficient to sustain the judgment. The defendant appears to have had a fair trial.

The judgment and the order are affirmed.

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE MILBURN: I dissent for the reasons stated by me in *In re Terrett, ante,* p. 325, 86 Pac. 266. The defendant is not, in my opinion, guilty of *forgery.*