State v. Stanley.

No. 27,195.

THE STATE OF KANSAS, *Appellee,* v. CHARLES STANLEY, *Appellant.*

SYLLABUS BY THE COURT.

1. CRIMINAL LAW — *Evidence — Immaterial False Testimony at Preliminary Examination.* In a criminal case the admission of evidence that the defendant at the preliminary examination had said a search warrant had not been read to him, when the fact was otherwise, is held not to require a reversal, notwithstanding it was immaterial whether or not the warrant was read.

2. RECEIVING STOLEN GOODS—*Proof of Theft—Sufficiency of Evidence.* In a prosecution upon a charge of knowingly receiving stolen goods the conclusion that goods received by the defendant at another time were stolen is held to have been warranted by the evidence.

3. CRIMINAL LAW—*Evidence—Other Offenses—Receiving Stolen Goods.* In a prosecution upon a charge of knowingly receiving stolen goods, evidence of the defendant's having received other stolen goods a short time before is held to have been properly admitted.

4. RECEIVING STOLEN GOODS—*Knowledge of Larceny—Sufficiency of Evidence.* In a prosecution upon a charge of receiving stolen goods the defendant's knowledge of their having been stolen is sufficiently proved if from the circumstances established he must have understood that they were stolen. (*State v. Lewark,* 106 Kan. 184, 186 Pac. 1002.)

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed March 12, 1927. Affirmed.

*A. L. Majors* and *C. B. Skidmore,* both of Columbus, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *R. O. Mason,* of Columbus, for the appellee.

The opinion of the court was delivered by

MASON, J.: Charles Stanley was convicted upon a charge of knowingly receiving thirty-five pairs of stolen shoes. He appeals.

1. Two witnesses testified that they stole the shoes—in three boxes—from a Frisco freight car at Quapaw, Okla., and sold them to the defendant about midnight. They gave other testimony which, if it was true, showed clearly that he bought them knowing they were stolen. The shoes were found and seized under a search warrant. The transcript shows this record of a part of the exami-

Criminal Law, 16 C. J. pp. 589 n. 14, 610 n. 22; 17 C. J. p. 317 n. 10. Receiving Stolen Goods, 34 Cyc. pp. 516 n. 16, 527 n. 97, 529 n. 10, 530 n. 19; 22 L. R. A. 833; 17 R. C. L. 88; 62 L. R. A. 269; 17 R. C. L. 88.

nation of an officer who accompanied the sheriff when the search was made:

"What did he [the defendant] say with reference to the reading of the search warrant in the preliminary examination of this case?

"I understood him to say that Mr. Helman didn't read the search warrant to him.

"And what is the fact as to whether or not he did read it to him?

"He did. He read it to him.

[BY THE DEFENDANT'S ATTORNEY]: We object to this as being immaterial in this case.

"BY THE COURT: The answer may stand."

Complaint is made of this ruling of the court on the ground that the purpose of the evidence was to impeach the defendant by showing he had testified falsely, and that it should have been excluded because the matter to which it related—whether the search warrant was read—was not material, and evidence of false statements as to immaterial matters is not admissible for that purpose. It will be noted that the objection appears to have been made only to the question and answer as to whether or not the search warrant had in fact been read, and was based solely upon the ground of immateriality. The sheriff, as a witness for the state, had already been asked on cross-examination if he had read the search warrant to the defendant and had given an affirmative answer; and another witness for the state had given the same evidence without objection, as still other witnesses did later. However, if the objection now urged had been specifically made to all parts of the testimony in question the probability of the verdict having been affected by it is too remote to make its admission a basis of reversal.

2. Complaint is made of the admission of testimony concerning the previous purchase by the defendant from a person other than those from whom he bought the shoes, of a lot of overalls, which were spoken of as having been stolen from a store in Ketchum, Okla. Objection is made on two grounds: (1) because there was no evidence that the overalls were stolen; and (2) that the evidence concerning them was introduced for the purpose of showing he had been guilty of a different offense from that charged and thereby creating feeling against him.

It is true no witness testified that the overalls were stolen, or to specific facts from which it would follow that such was the case. But testimony was given in which that fact was assumed, and no effort was made on cross-examination to learn the basis of that as-

State v. Stanley.

sumption.   For instance, a special agent of the Frisco railroad, who helped the sheriff in serving the search warrant, testified that during the search the assistant chief of police of Cardin, Okla., was given a list and started to search the store for the goods from Ketchum taken in a store robbery there, and presently announced that he had found a lot of overalls stolen from the Ketchum, Okla., store—

"And he packed up a bundle of overalls and started to move them to a position in the front end of the store, and Mr. Stanley objected, stating that all of those overalls were not from the Ketchum store, or words to that effect. In searching further, about the same proceedings took place in connection with the other shoes and items supposed to be from the Ketchum store robbery, but of which I did not make an accurate record."

The assistant chief of police referred to testified that upon the list already mentioned being handed to him—

"I looked for the stuff that was out of the Ketchum store that I had been looking for for quite a while;  . . .  I found the overalls the first thing.  . . .  I found the overalls in the back end by the ice box in the southwest corner in behind some stuff laying on the shelf.  . . .  He [the defendant] said he got it [the batch of overalls] from a little fellow and a tall fellow—Sammy Davis, I believe."

One of the men from whom the defendant bought the shoes testified that he was present when Sammy Davis sold the defendant overalls from Ketchum.   We think the evidence warranted the jury in concluding that the overalls found in the defendant's store had been stolen in Ketchum.   His protestation that they were not from the Ketchum store showed or tended to show that he knew of the theft of overalls there.

3.   The two men who sold the stolen shoes to the defendant testified that they had previously sold him another lot of twenty or twenty-two pairs stolen by them from the same place.   The evidence of his having purchased the stolen overalls was admissible under the rule allowing proof of offenses committed in a manner similar to that employed in the one upon which the prosecution is based, where guilty knowledge is an element of the offense and the evidence tends to show it.   Practically the whole question at issue on the trial of this case was whether the defendant, who clearly purchased stolen goods, did so knowing them to have been stolen.   Evidence that on other occasions he had knowingly bought stolen goods tends to increase the probability that he was not innocently deceived in the case on trial.

"Where guilt cannot be predicated on the mere commission of an act, guilty knowledge may be proved by evidence of complicity in similar offenses." (16 C. J. 589.)

"Where the charge is that of receiving stolen goods, evidence of the receipt of other stolen goods by defendant at a time not remote from, and under circumstances connected with, the receipt in question is admissible to show guilty knowledge, intent, and system." (16 C. J. 610.)

The principle involved is fully discussed, with the citation of authorities, in *State v. King*, 111 Kan. 140, 206 Pac. 883.

4. Complaint is also made of an instruction to the effect that to justify a conviction it was not necessary for the state to prove that the defendant knew when, where or by whom the goods were stolen, or that he had received positive and direct information that they were stolen; that it was sufficient if it were proved that from the facts and circumstances known to him he must have understood that he was acquiring stolen property. This is in accordance with the rule heretofore laid down by this court (*State v. Lewark*, 106 Kan. 184, 186 Pac. 1002) from which it does not recede.

The judgment is affirmed.