STATE, RESPONDENT, *v.* KEAYS, APPELLANT.

(No. 7,255.)

(Submitted June 28, 1934. Decided July 14, 1934.)

[34 Pac. (2d) 855.]

*Messrs. West & Stromnes,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Dousman* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Blaine county, and from an order denying defendant a new

trial. Roy H. Keays was convicted under section 11388, Revised Codes 1921, of the crime of receiving stolen property, knowing the same to have been stolen. The property involved is described in the information as a gray mare branded $\frac{S}{X}$ (S bar X) on the right shoulder, the property of one Ben Davis.

The animal was stolen by one James Kirwan and delivered to the stockyards at Chinook on January 2, 1933. On the next day Keays went to Chinook, either by car with Kirwan or on the train, and purchased a carload of horses from different parties. The animal was sold to him by Kirwan for the going price of fifteen dollars; this was about the price paid for such animals in that region at the time. Kirwan sold several horses to the defendant that day; most of them he afterwards admitted were stolen. Keays arranged for an official inspection of the horses he bought, and none were loaded without such inspection. The inspection was made by James McCoy, the regularly constituted inspector. McCoy made a list of all horses, with general description and particular designation of brands. He listed the animal as a gelding, and on the witness-stand in this case said: "It could have been possible that the animal was a mare, but I don't think it was. You might make a mistake on that. I generally try to get which sex it is."

The shipment was billed to Ravenna, Ohio, and later diverted to Moorhead, Minnesota, where the horses, including the animal in question, were offered for sale at public auction. The Davis animal was not sold at the auction, but was later sold at private sale to one Odegaard. The horses were traced by the stock inspectors and the owners, and as a result Kirwan was arrested and prosecuted for grand larceny. He finally pleaded guilty to the charge, and was given a sentence of two years in the state prison. At the time of the trial of Keays, Kirwan appeared as a witness for the state and testified to the details of the whole matter.

Keays lived at Great Falls, but had been engaged in the horse buying business at various points in northern Montana. It was his custom to let it be known that he would be at a given point on a certain day for the purpose of buying horses; he would then select and purchase a carload from the offerings of the local people, and thereafter have them inspected and shipped direct from the point of purchase to some place out of the state for sale.

Evidence of the purchase and shipment of several carloads of horses made shortly before the January 3 shipment, and at least one carload soon after that time, was admitted. Proof was adduced to show that there were one or more stolen horses in each of these shipments.

The Davis animal shipped in the January 3 shipment was bought from Kirwan, and Keays claimed he purchased it and that the stock inspector passed it on the strength of a bill of sale exhibited by Kirwan. This bill of sale covered several horses and bore the signature of one Tom Moran. It was witnessed by one Breitenstein, a hotel man at Havre. The bill of sale was exhibited to the stock inspector, but was not retained by him. Kirwan later testified that the Moran bill of sale was not genuine; he gave his own bill of sale for this and the other animals sold by him to Keays that day. Keays claims that he relied on these bills of sale, and as a result paid full value for the horses, and that he did not know or suspect that any of them were stolen; that there was nothing to suggest that any of the property sold to him had been stolen.

The jury returned a verdict of guilty against Keays, and the court imposed a sentence of three years in the state prison. Thereafter a motion for new trial was made and overruled.

It may be observed that the only issue left for determination by the jury was the question of Keay's knowledge of the fact that the animal in question was stolen. This very element is the prime essential in every prosecution for the offense charged. It must not be forgotten that the crime of receiving

stolen property defined in the section under which this case was prosecuted (sec. 11388, supra) is a distinct statutory crime. (*State* v. *Huffman,* 89 Mont. 194, 296 Pac. 789.) While it is true that the fact of the property having been stolen is important, the establishment of that fact alone is not sufficient to sustain a conviction for the separate and distinct crime here under consideration. "Guilty knowledge, involving guilty intent, on the part of the defendant, is essential to the constitution of the offense." (Wharton on Criminal Law, 12th ed., p. 1546.) This principle must be kept in mind in the consideration of the assignments of error involved in this appeal.

Defendant has made and urges fifty-six assignments of error. The most serious one involves the giving of instruction No. 12. This instruction was offered by the state; when offered it was not quite the same as given. It reads as follows: "You are instructed that if you believe from the evidence that the gray mare branded S bar X on the right shoulder was stolen, that whether defendant knew that such animal was stolen is to be determined by all of the facts in the case. It is not necessary that he should have heard the fact from the eye-witness. He is required to use circumspection usual with persons taking horses by private purchase. That which a man in the defendant's position ought to have suspected, he must be regarded as having suspected, as far as was necessary to put him on guard and on his inquiries. The proof may be circumstantial, and an inference is the irresponsibility of the vendor or vendors. Knowledge may be deduced from conduct and behaviour, and the responsibility of the person or persons from whom the horse or horses was or were received."

The record discloses that counsel for the defendant objected to the instruction on several grounds, and as a result the wording was changed, although the changes did not satisfy counsel, and the objections were allowed to stand. This instruction was manifestly based upon the provisions of section 1232, page 1549, of volume 2 of Wharton's Criminal Law,

410

twelfth edition. The full text of that section is as follows:
"Whether the defendant knew that the goods were stolen is
to be determined by all the facts of the case. It is not neces-
sary that he should have heard the facts from eye-witnesses.
He is required to use the circumspection usual with persons
taking goods by private purchase; and this is eminently the
case with dealers buying at greatly depreciated rates. That
which a man in the defendant's position ought to have
suspected, he must be regarded as having suspected, as far
as was necessary to put him on his guard and on his inquiries.
But it has been said that, to justify a conviction in the case
of goods found, it is not sufficient to show that the prisoner
had a general knowledge of the circumstances under which
the goods were taken, unless the jury is also satisfied that
he knew that the circumstances were such as constituted a
larceny. The proof in any case is to be inferential; and
among the inferences prominent are inadequacy of price, irre-
sponsibility of vendor or depositor, and secrecy of transaction."

It will be observed that the section deals with abstract
principles of law and evidence, and that it was sought to
change the instruction as given so as to make it apply con-
cretely to the instant case. In so doing, the language of the
latter part of the section was substantially changed, and im-
portant qualifying provisions omitted. The judge evidently
doubted the wisdom of giving to the jury a rather involved
and technical statement of abstract law. In this we agree with
him. However, the trouble comes from the fact that the
changes made, in an endeavor to adapt the principle to the
facts in this case, render the instruction unintelligible and
misleading.

The text says: "The proof in any case is to be inferential;
and among the inferences prominent are inadequacy of price,
irresponsibility of vendor or depositor, and secrecy of trans-
action." For the foregoing there was inserted in the instruc-
tion the following: "The proof may be circumstantial and an
inference is the irresponsibility of the vendor or vendors.
Knowledge may be deduced from conduct and behaviour, and

the responsibility of the person or persons from whom the horse or horses was or were received.''

Defendant argues that the instruction told the jury, in effect, that if the people from whom defendant bought horses were irresponsible, that was a circumstance from which the jury could infer guilty knowledge, that is, knowledge of the fact that horses sold by them were in fact stolen, and that, having so inferred, an inference of guilt might also be inferred, and that without other proof of knowledge on the part of the defendant that the vendors of such horses were irresponsible. To put it in another way, defendant in his objection asserted that the instruction gave warrant to the jury to convict him if they found that some of the vendors of the horses were irresponsible, regardless of whether defendant knew or should have known of such irresponsibility; that the jury could convict him on the bad reputation or irresponsibility of third persons, even though he did not know, or had no reasonable means of knowing, the character or irresponsibility of such persons; that the instruction permitted the jury to find the defendant guilty by reason of negligence, rather than because of criminal intent and guilty knowledge; that it was a comment on the evidence, in view of the fact that the information charged the larceny of a mare and most of the proof was to that effect, but the evidence of the stock inspector and his inspection sheet designated the animal as a gelding, thereby leaving the sex of the animal a question of fact to be found by the jury from the evidence.

Defendant further urges that there was error in the part of the instruction which advised the jury ''that which a man in defendant's position ought to have suspected he must be regarded as having suspected, as far as was necessary to put him on his guard and on his inquiries.'' He asserts that this part of the instruction told the jury that there were things in connection with the various purchases which defendant should have suspected, and which were sufficient to put him on his guard.

Elsewhere we have discussed somewhat the necessity that there must be guilty knowledge on the part of the defendant. The statute requires, and the information charges, that the defendant knew that the property was stolen. So the question of knowledge is a most essential ingredient of the crime. In the note appended to the case of *State of South Carolina* v. *Rountree*, 22 L. R. A. (n. s.) 833, it is said: "There is some conflict among the cases as to just what facts and circumstances are sufficient to warrant the jury in finding that the receiver took the stolen goods with knowledge that they were stolen. Some courts lay down the rule that, if the surrounding circumstances are such as would charge a reasonably prudent man with knowledge, the conviction must be sustained. But, as pointed out in some of the cases, this test makes a person criminally liable for not being as prudent as the ordinary person, and is not supported by the weight of authority."

The supreme court of Missouri, in the case of *State* v. *Weisman*, (Mo.) 225 S. W. 949, 950, discussed this subject and said: "It is actual knowledge that constitutes that element of guilt, and not mere negligence in failing to know. There cannot be a crime without criminal intent. True, the knowledge which the defendant may have possessed as to the ownership of the goods may be shown by circumstances, but actual knowledge must be proved and must be found by the jury before they can find the intent which is a necessary element of the crime."

The supreme court of Wisconsin, in the case of *Meath* v. *State*, 174 Wis. 80, 182 N. W. 334, 335, discussed an instruction which is in effect similar in some respects to the one now under consideration, and condemned the instruction. In the course of the discussion the court referred to a previous decision of that court, and said: "If the language in the *Jacobs Case* [167 Wis. 299, 166 N. W. 324], supra, could be construed to warrant the giving of such an instruction as here before us which would warrant a conviction if the jury are merely satisfied that the defendant ought to have known

that the property was stolen, then such language must be deemed now modified." It is also worthy of comment that in the Wisconsin case just mentioned the court made the further observation that in view of the fact that the evidence in the case was dependent so largely upon the testimony of the thief, the court did not feel justified in saying that such a substantial error in the charge to the jury did not prejudice the result.

It may be noted here that the state's case is largely supported by the evidence of Kirwan, the thief, who actually stole the horse and sold it to defendant. In the whole case there are but three definite and specific items of evidence, in addition to circumstances which may fairly be said to point to guilty knowledge on the part of the defendant. Two of these items of evidence were produced by Kirwan. He testified that on the morning the horses were delivered to the defendant he conveyed defendant from Havre to Chinook by car, and that on the way defendant asked him if any of the horses were "hot," and that he answered that they were not very hot; that he had a bill of sale for them signed by one Breitenstein. He further testified that when the particular animal in question was put in the "squeeze" and a halter was put on her and she was led out, she proved to be gentle, and that defendant said, "I believe this one belongs to me. I wonder what sodbuster will be hollering about this one." The other item of evidence that might be construed as imputing guilty knowledge was detailed by one Morgan, who said that after the horses were loaded, Everett Davie, who had also sold horses to defendant, said to defendant, "I have two horses in that shipment; will I have to sign a bill of sale?" and the defendant answered, "Jim signed all the bills of sale. We will let him take the rap." Thus it will be observed that we are somewhat in the same position as that expressed by the Wisconsin court. The evidence of guilty knowledge here does depend largely upon the testimony of the thief, and while we elsewhere herein discuss the question of accomplice and hold that Kirwan was not an accomplice in the

eyes of the law, in this particular instance, and that therefore his testimony did not require corroboration, the fact still remains that his was the testimony directly disclosing guilty knowledge on the part of the defendant, if any he had.

In view of the ambiguity of the instruction as given and of the very technical nature of the subject matter involved in inferences and presumptions then under consideration by the court, the giving of the instruction was, we think, prejudicial error. This is particularly manifest when we consider that in this case the fact of the larceny of the property was either admitted or not controverted. The receipt of the animal by the defendant from the thief was admitted, and the only issue really left for the decision of the jury was involved in the question, Did defendant receive the property knowing the same to have been stolen? This was the vital question involved in the case, and the rights of the defendant were prejudiced by the giving of the instruction in the form indicated.

Many of the assignments of error are not worthy of separate treatment and discussion. Others will not be likely to arise upon a second trial of the cause. Those that are likely to arise on retrial we will consider as follows:

At the trial the court admitted, over defendant's objection, oral and documentary evidence of horses shipped in five carloads which were shipped by defendant prior to January 3, 1933, and of one carload shipped subsequent to that date. The first of the prior shipments was made on October 18, 1932; the other four shipments being between that date and January 3, 1933. The subsequent shipment was made on February 2, 1933. The state produced evidence showing that there was at least one stolen horse in each one of these shipments. Defendant predicates error upon the admission of evidence regarding these shipments. He argues that such shipments were not connected by circumstances, *res gestae,* system, or guilty knowledge with the January 3 shipment.

It appears that defendant admitted that he received, transported and sold the horse in question. However, he denied

that he ever had any knowledge or belief that it was stolen. It follows that the principal and only issue in this case is whether defendant received this horse knowing it to have been stolen. The question as presented, then, is this: Was evidence of the prior and subsequent shipments in which there were stolen horses admissible as tending to show that defendant knew or believed that the horse in question was stolen?

In 17 R. C. L. 88, the rule is stated as follows: "While evidence of the commission of offenses other than that charged is generally incompetent, still evidence of the defendant's possession of other stolen goods prior to or at the time of the commission of the offense charged is admissible as tending to establish that the defendant received with guilty knowledge the goods specified in the indictment. * * * And it has been held that such evidence is admissible without direct proof that the defendant knew that the other goods so received by him were stolen, on the ground that while a single instance might not be admissible without proof of scienter, the receipt of goods on repeated occasions under circumstances tending to arouse suspicion affords a fair basis for an inference of guilty knowledge. It is immaterial whether the other possessions occurred before or after the possession charged. It is the multiplicity of instances that affects belief, and not the time of their occurrence, provided the time is not so distant as to be accountable for on the theory of chance acquisition."

It is quite generally held that in cases of this nature evidence of other similar offenses is admissible as tending to prove intent or guilty knowledge. (1 Wigmore on Evidence, sec. 324; *State* v. *Rule,* 11 Okl. Cr. 237, 144 Pac. 807; *State* v. *Stanley,* 123 Kan. 113, 254 Pac. 314; *Wertheimer & Goldberg* v. *State,* 201 Ind. 572, 169 N. E. 40, 68 A. L. R. 178; annotation in Ann. Cas. 1913D, 166; 16 C. J. 610; *State* v. *Renslow,* 211 Iowa, 642, 230 N. W. 316.)

In the case of *State* v. *Hall,* 45 Mont. 498, 125 Pac. 639, 644, this court quoted with approval the following from the case of *People* v. *Ruef,* 14 Cal. App. 576. 114 Pac. 48, 54: "The rule is that, where several crimes are connected as part of one

scheme or plan, all of the same character, and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tending to show logically that the crime in question was a part of such common scheme. If the several crimes are part of a chain of cause and consequence so linked as to be necessarily connected with the system or general plan, they are admissible.''

Evidence of other acts of the accused, of a like nature with those constituting the offense charged, is admissible not only for the purpose of proving intent, guilty knowledge, or motive, in corroboration of the testimony as to the offense charged, but also to prove the identity of the perpetrator of the crime; to negative the idea that the offense complained of was the result of mere accident or mistake. (*State* v. *Wyman*, 56 Mont. 600, 186 Pac. 1; *State* v. *Hopkins*, 68 Mont. 504, 219 Pac. 1106; *State* v. *Newman*, 34 Mont. 434, 87 Pac. 462; see, also, *State* v. *Shannon*, 95 Mont. 280, 26 Pac. (2d) 360.) ''The length of time over which an inquiry as to other offenses of the same nature committed by defendant may extend is a matter within the sound legal discretion of the trial court.'' (*State* v. *Hall*, supra.)

In the light of the foregoing authorities, we conclude that the evidence of other shipments of horses by defendant was properly admitted.

The county attorney in his opening statement to the jury adverted to six carload shipments of horses which had been shipped by defendant. He stated that the state proposed to produce evidence that there was at least one stolen horse in every one of those shipments. Defendant contends that the court erred in not requiring the county attorney to state for what purpose he proposed to offer proof of such other stolen animals. There is no merit in this contention. The county attorney merely obeyed the mandate of the statute in making his statement. (Sec. 11969, Rev. Codes 1921.) He had a right to outline the facts as the state intended to produce them for the consideration of the jury. ''The prosecuting attorney may

generally, in opening his case to the jury, fully outline the facts which he expects, and which it is competent for him, to prove." (16 C. J. 889, and cases cited.) As we have already observed, the evidence of the other shipments containing stolen animals was competent and admissible. The county attorney had a right to refer to them in his opening statement.

Paul Raftery, secretary of the livestock commission of the ▉ state of Montana, was a witness for the state at the trial. He was permitted to state in detail, from an abstract prepared by him, who were the registered owners of the various brands as shown on the brand inspector's reports of the shipments of horses made by defendant. Defendant objected to this testimony on the ground that it called for a conclusion of the witness and was not the best evidence of ownership.

Section 3304, Revised Codes 1921, provides for the recording of brands. It reads in part as follows: "And a copy of such record certified by the general recorder of marks and brands shall be prima-facie evidence of such right; and such certificate shall likewise be prima-facie evidence that the person * * * entitled to use such mark or brand is the owner of all animals on which the same appears." Defendant argues that the certificates mentioned in the above section were the best evidence of ownership, and that it was error to admit the oral testimony of Raftery upon this question. It is true that the certificates specified by the statute would have been the best evidence. The admission of the oral testimony in the place of such certificates did constitute at least a technical error. It is not necessary to decide whether the error thus committed would of itself be sufficient to necessitate a reversal of the judgment, because we have found that there must be a reversal upon other grounds.

Prior to the trial of the case, defendant's counsel interviewed ▉ Kirwan, the vendor of the horse, in the jail at Havre, where he was then being held on a charge of larceny of the horse sold to defendant by him. At that time Kirwan gave defendant's counsel a written statement which reads as follows: "When I shipped the S bar X horse at Chinook as my horse,

January 3, 1933, that as far as my knowledge, Ray Keays did not know that the horse was a stolen horse. To my knowledge, Ray Keays never bought a horse from anyone that he knew was stolen property or suspected was stolen property." At the trial Kirwan was permitted, over defendant's objection, to state what he thought the written statement meant. Defendant asserts that this was error.

We see no error in admitting this testimony. Where a witness is impeached by a statement or writing made and executed by him, he may explain the circumstances under which such statement was made. (*Kennelly* v. *Savage*, 18 Mont. 119, 44 Pac. 400; *Du Vivier* v. *Phillips*, 18 Mont. 370, 45 Pac. 554; Wigmore on Evidence, sec. 1044.)

In 5 Jones on Evidence, page 232, it is said: "Since the principal object of the rule requiring the cross-examiner to lay the foundation for impeachment by interrogating the witness as to his former statements is to prevent injustice to the witness by giving him an opportunity to recollect the facts and to explain any apparent inconsistency, it follows that the opportunity should not be denied on the re-examination. The witness may then be allowed to reaffirm or explain such statements, their meaning and design, and to give the circumstances and influences under which they were made." (See *State* v. *Harris*, 106 Or. 211, 211 Pac. 944. Compare section 10669, Rev. Codes 1921. See, also, 2 Nichols on Applied Evidence, 1307 and 1339, and cases cited.)

Defendant was asked on cross-examination whether he had taken horses from one county to another without having their brands inspected before crossing the county line. This was objected to as being entirely "immaterial." The objection was overruled. It is argued that this question was designed solely for the purpose of showing that defendant had committed an extraneous offense, and thus embarrassing and humiliating him before the jury. Defendant in his brief argues at great length to the effect that it is not illegal to run horses from one county to another without a brand inspection. The state, on the other hand, claims that under sec-

tion 3324, Revised Codes 1921, there must be a brand inspection before horses can be taken from one county into another.

Defendant testified that he thought it was illegal to take horses across a county line without a brand inspection; therefore, this testimony had a bearing upon the question of defendant's guilty knowledge. Whether it actually was legal or not is immaterial. The testimony was relevant and material to the principal issue involved in the case, viz., Did defendant know or believe that the horses had been stolen?

Defendant contends that he was entitled to an instruction on the theory that Kirwan was an accomplice. In support of this contention he cites and relies upon the case of *State* v. *Keithley,* 83 Mont. 177, 271 Pac. 449, 452. However, that case holds that one who steals property is not an accomplice of one who receives it knowing it to have been stolen, unless the thief and receiver conspire together in advance of the larceny for one to steal and the other to receive, so that that would make the party an accessory before the fact, and under the statute (sec. 11863, Rev. Codes 1921) an accessory before the fact is a principal. Here there was no evidence to the effect that Keays knew anything about the theft of the animal before it was offered for sale to him. Consequently, Kirwan was not an accomplice, and the court was correct in refusing to treat him as such.

There is no merit in defendant's assertion that the court erred in giving the state's requested instruction No. 19, relative to the credibility of a witness who has testified falsely. It is a stock instruction, and in strict conformity with the provisions of section 10672, subdivision 3, Revised Codes of 1921. It does not require any such qualifying clause as suggested by defendant. (See *State* v. *Penna,* 35 Mont. 535, 90 Pac. 787; *State* v. *Kanakaris,* 54 Mont. 180, 169 Pac. 42, Ann. Cas. 1918D, 956; *Hageman* v. *Arnold,* 79 Mont. 91, 254 Pac. 1070.)

In view of the fact that the judgment herein must be reversed and a new trial granted, it will not be necessary to enter into a discussion of the sufficiency of the evidence to

420

support a verdict of guilty. We content ourselves with saying that there was sufficient evidence to go to the jury. Neither will it be necessary to discuss the additional points raised by reason of the court's refusal to grant defendant's motion for a new trial.

The judgment and order are reversed and the cause remanded to the district court of Blaine county, with direction to grant the defendant a new trial.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.