MILO FOYIL v. STATE.

No. A-10741.   Nov. 19, 1947.

(187 P. 2d 254.)

J. W. Bashore, of Vinita, and Ralph Rawlings, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Frank L. Haymes, Co. Atty., of Vinita, for defendant in error.

BAREFOOT, P. J.   Defendant, Milo Foyil, was charged in the district court of Craig county with the crime of embezzlement; was tried, convicted and sentenced to serve a term of four years in the State Penitentiary, and has appealed.

The defendant was employed as an appraiser for the Commissioners of the Land Office of the State of Okla-

homa. He was charged in the information with the embezzlement of $1,306.54 of the funds belonging to said Commissioners.

The first assignment of error presents a question as to the section of the statute under which defendant was prosecuted and found guilty. It is contended by the defendant that he was charged in the information under Tit. 21 O. S. 1941 § 341, which is as follows:

"Every public officer of the State or any county, city, town, or member or officer of the Legislature, and every deputy or clerk of any such officer and every other person receiving any money or other thing of value on behalf of or for account of this State or any department of the government of this State or any bureau or fund created by law and in which this State or the people thereof, are directly or indirectly interested, who either:

"First: Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money or anything of value received by him as such officer, clerk, or deputy, or otherwise, on behalf of this State, or any subdivision of this State, or the people thereof, or in which they are interested; or,

"Second: Receives, directly or indirectly, any interest, profit or perquisites, arising from the use or loan of public funds in his hands or money to be raised through his agency for State, city, town, district, or any county purposes; or

"Third: Knowingly keeps any false account, or makes any false entry or erasure in any account of or relating to any moneys so received by him, on behalf of the State, city, town, district or county, or the people thereof, or in which they are interested; or

"Fourth: Fraudulently alters, falsifies, cancels, destroys or obliterates any such account; or

"Fifth: Wilfully omits or refuses to pay over to the State, city, town, district or county, or their officers or

agents authorized by law to receive the same, any money or interest, profit or perquisites arising therefrom, received by him under any duty imposed by law so to pay over the same, shall upon conviction thereof, be deemed guilty of a felony and shall be punished by a fine of not to exceed five hundred dollars, and by imprisonment in the penitentiary for a term of not less than one nor more than twenty years, and in addition thereto shall be disqualified to hold office in this State, and the court shall issue an order of such forfeiture, and should appeal be taken from the judgment of the court, the defendant may, in the discretion of the court, stand suspended from such office until such cause is finally determined."

It is further contended that the court instructed the jury under Tit. 64 O. S. 1941 § 114, which provides:

"Any employee of the Commissioners of the Land Office who shall be guilty of embezzling any of the funds or monies of the Commissioners of the Land Office shall be punished by confinement in the State Penitentiary not exceeding five years, and, in addition thereto it is hereby made the mandatory duty of the Commissioners of the Land Office to immediately discharge any such employee upon the discovery of the Act or Acts of embezzlement."

It will be noted that the first section quoted provides for a fine of not to exceed $500, and imprisonment in the State Penitentiary for a term of not less than one nor more than 20 years; while the second section fixes the punishment at confinement in the penitentiary for a term not to exceed five years, and the immediate discharge of such employee, upon the discovery of such act of embezzlement.

The information in the instant case charged:

"* * * that Milo Foyil, did in Craig County, and in the State of Oklahoma, on or about the 15th day of November, in the year of our Lord One Thousand Nine Hundred and Forty-four, and anterior to the presentment hereof, com-

mit the crime of embezzlement in the manner and form as follows, to-wit: That the said Milo Foyil, in the county and State aforesaid, on the 15th day of November, 1944, did knowingly, wilfully, unlawfully, wrongfully, fraudulently and feloniously commit the crime of embezzlement as follows, to-wit: That the said Milo Foyil then and there being the agent of and employed by the Commissioners of Land Office, of the State of Oklahoma, and while acting as such agent and employee was charged and entrusted with the collection, receipt, safekeeping and transmitting certain public money and funds belonging to said Commissioners of Land Office, a department of the State of Oklahoma, created by law, in which the people of the State of Oklahoma are directly interested, and the said Milo Foyil, while acting as such agent and employee as aforesaid did then and there receive, collect and have and hold in his possession and under his control by virtue of said agency and employment certain public money and funds belonging to the Commissioners of Land Office of the State of Oklahoma, and funds in which the State of Oklahoma, and the people thereof are directly interested in the sum of $1,306.54, and the said Milo Foyil, being then and there being charged and entrusted with said money and funds as aforesaid, did, then and there without authority of law, and not in the due and lawful execution of his trust as such agent and employee as aforesaid, did wilfully, unlawfully, wrongfully, fraudulently and feloniously convert and appropriate to his own use and benefit, and to a use and purpose not in the lawful execution of his trust, the said sum of $1,306.54, of the value of $1,306.-54, good and lawful money of the United States of America, with the wilful, unlawful, fraudulent and felonious intent on the part of him the said Milo Foyil, to embezzle the said sum of money contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

We have carefully examined and considered this information, and have reached the conclusion that it was sufficient on its face to charge a crime under either of

the sections of the statute above quoted. The county attorney had the right under the law and the information to prosecute the defendant under either of the statutes. This conclusion is sustained by the case of Krause v. State, 75 Okla. Cr. 381, 132 P. 2d 179, 181. It is there said:

"The indictment properly charged an offense under either Section 2495, supra, or Section 7761, supra (1931, Tit. 21 O. S. 1941 § 341, Tit. 19 O. S. 1941 § 641), and the state could elect to maintain its prosecution under either of said statutes. In Hays v. State, supra (22 Okla. Cr. 99, 210 P. 728) it is stated:

" 'Where two statutes of the same class make an offense punishable in different ways, an accused may be proceeded against and punished under either of such statutes.'

"In the absence of a motion by the defendant to require the prosecution to elect under which statute he was maintaining the prosecution, it was not error for the court to construe the indictment as being filed under section 2495, supra, and proceed accordingly."

See, also, Hays v. State, cited above.

In 42 C. J. S., Indictments and Informations, § 185, it is said:

"The prosecuting attorney is not required to state at the trial the particular section of the Code under which accused is being tried where the offenses or acts with which accused is charged are fully set out." Citing: State v. Newman, 34 Mont. 434, 87 P. 462; People v. Fewkes, 214 Cal. 142, 4 P. 2d 538; People v. Fremont, 47 Cal. App. 2d 341, 117 P. 2d 891; People v. Scott, 66 Cal. App. 200, 225 P. 767.

In State v. Leonard, 56 Wash. 83, 105 P. 163, 165, 21 Ann. Cas. 69, it is said:

"It is also urged that, inasmuch as this information might have been filed under any one of several sections

of the Code, viz., 7119, 7123, 1606, and 7213, it was error not to require the prosecuting attorney to elect and designate under which statute he would proceed. It makes no difference to the appellant that the penalty is different in the different sections. What concerns him are the acts with the commission of which he is charged. State v. Isensee, 12 Wash. 254, 40 P. 985.

"But counsel insists that, while the information was probably filed under the provisions of section 1606, the objection to the prosecution under that statute is that there is no analogy between the subject-matter of the statute and the information. But we think the analogy is very strong. Section 1606 provides that 'any county officer who is paid a salary, who shall fail to pay to the county treasury all sums that shall have come into his hands for fees and charges in his office, or by virtue of his office, whether under the laws of this state or of the United States, shall be deemed to be guilty of embezzlement,' etc. The information would seem to be drawn exclusively under this section, for it charges the appellant with being a county officer who receives a salary, with receiving money for fees, and for failing to pay the same over to the county treasurer. We hardly see how the information could be any more specific and certain with reference to the requirements of section 1606."

In the case of Hughes v. State, 7 Okla. Cr. 117, 122 P. 554, 556, it is said:

"No information is insufficient by reason of any imperfection in matter or form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. It is well settled that, where one felony is set out in various ways in different counts to meet diversities in the proof, no election of counts is required. The state may be required to elect upon which count of an indictment or information it will claim conviction only when felonies not of the same character are charged in different counts in the same indictment or information.

"Whether the state should be required to elect upon which count of the information it would stand is in a case of this character in the discretion of the trial court. In this case it was all a question of intent as to whether or not the defendant was guilty of embezzlement of the apples or of the money he derived from their sale and this was for the jury to pass upon under all the proof in the case, and the court very properly left this fact to be determined by the jury under the instructions given."

See, also, Williams v. United States, 17 Okla. 28, 87 P. 647.

In the instant case, after both parties had announced ready for trial, after the jury had been empaneled and the opening statement made to the jury by the county attorney and one witness had testified, counsel for defendant requested that the defendant be informed under what statute he was being prosecuted. The county attorney answered: "Title 21, Section 341."

Counsel for defendant then asked that he be furnished with a bill of particulars giving him all the information with reference to the particular items he was charged with having embezzled. This request or motion was overruled.

A motion was then made by defendant to dismiss the action for the reason that the court did not have jurisdiction to try the defendant under Title 21, section 341. The court, after a hearing, overruled this motion.

Counsel for defendant then stated to the court:

"If after the election of the state to proceed under Title 21, section 341, of the 1941 statutes that if, for any reason the prosecution is charged to Title 64, section 114, (defendant) requests that he be given an opportunity of having a preliminary hearing thereunder, or waiving the same." And the court stated: "Overruled. It is the attitude of the court to formally instruct the jury upon the

information and the law governing the trial of this case." And, continuing: "At the close of all of the evidence and after all parties have rested, the court will formally instruct the jury as to the law of the case under the proper statute."

From the above statement we do not find that there was prejudicial error in the action of the court. In the first place, this request and action was after the trial had commenced. Much of the action of the court was within the discretion of the trial court. From the authorities above cited, it was not necessary for the county attorney at that time to make an election under which statute the charges were brought. The court, after hearing the evidence in the case, came to the conclusion that Tit. 64 O. S. 1941 § 114 was the applicable statute, and so charged the jury. As above stated, this statute provided for a maximum punishment of five years in the penitentiary, and Tit. 21, § 314, a maximum penalty of 20 years in the penitentiary. The evidence justified a conviction under either of the statutes, and there was no proof lacking on the part of the state to sustain a conviction under either statute. Certainly defendant was not prejudiced, and if any error was committed, it would be justified under the harmless error doctrine so often announced by this court.

Counsel for defendant in his brief states:

"The writer of this brief feels, that notwithstanding the tendencies of the courts to divest the defendant, of what we used to call technical defenses and to make it easier to secure convictions; that this defendant never had a chance in a trial of his case."

We do not find from this record that defendant has been deprived of any right by technicalities. This court in recent years has been unusually careful in not deciding

cases by the application of technicalities, and has applied this rule both to the state and the defendant. No appeal has been dismissed by this court by reason of a technical defect unless it affected the jurisdiction of the court. The evidence disclosed that this defendant had been employed as an "appraiser" for the Commissioners of the Land Office of this State, whose duty it is to administer and protect the funds of the school children of this state. It was defendant's duty under the law to rent and collect rents from lands owned by the Commission. He was furnished with a book of blank receipts, and it was his duty when money, checks or drafts were received by him from those who had leased lands, to prepare three receipts, and to give one to the party from whom he had received the money or check; one was to be sent immediately to the Commissioners of the Land Office, and one was to be retained by defendant. It was his duty to immediately send any money, checks or drafts to the treasurer of the Commissioners of the Land Office. Numerous witnesses testified to the payment of money and checks to defendant over a number of years in payment of lease money, and receipts were exhibited showing payment of this money, or the checks, to defendant; and the record reveals that this money, in an amount of approximately $1,306.54, was never sent to the Commissioners of the Land Office, but was appropriated by the defendant to his own use and benefit. Many of these payments had been made to defendant long before the filing of the information in this case. The record discloses that defendant had at different times given different receipts than those furnished him by the Commissioners, and this was not in compliance with the rules and regulations of the Department. In many instances, the receipts were not sent by defendant to the office of the Commissioners. The original books

of the Commission were exhibited and introduced in evidence, and an auditor from the office of the State Examiner and Inspector testified and submitted as evidence a complete audit which showed the defalcation of defendant, as above stated.

Just as the trial commenced, counsel for defendant exhibited several personal checks from a number of parties and tendered the checks to the county attorney. These checks were not offered in evidence, and they were not in an amount nearly sufficient to cover the amount the evidence revealed had been appropriated by defendant to his own use and benefit. The only effect these checks could have had, if introduced, would have been for the consideration of the jury in fixing the amount of punishment to be given defendant.

It is provided by Tit. 21 O. S. 1941 § 1461:

"Whenever it is made to appear that prior to any information laid before a magistrate charging the commission of embezzlement, the person accused voluntarily and actually restored or tendered restoration of the property alleged to have been embezzled, or any part thereof, such is not a ground of defense to the indictment, but it authorizes the court to mitigate punishment in its discretion."

When the state rested its case, the defendant offered a number of witnesses as to his good character and reputation. This was proper. He did not take the witness stand to deny or explain any of the evidence. This was his right under the law. The jury of his home county considered all of the testimony, and returned a verdict of guilty. This verdict, and the judgment and sentence rendered thereon, will not be set aside where the evidence was sufficient to sustain the same, as it was in this case. Abernathy v. State, 69 Okla. Cr. 142, 101 P. 2d 634; Lyon v. State, 68 Okla. Cr. 396, 100 P. 2d 287.

In the case of Miller v. State, 75 Okla. Cr. 428, 133 P. 2d 223, recently decided by this court, we passed upon the question of one being charged under one statute, and the court instructing the jury under another statute. The distinction between that case and the one here under consideration is that in the Miller case the statute under which the court instructed the jury provided for a greater degree of punishment than the one under which the information was drawn, while in the instant case, just the reverse is true. It may be readily seen that the instruction in the Miller case would be prejudicial to the defendant, and would not come within the rule of harmless error. In the Miller case, the rule is also followed that "where there exists a statute making a specific act criminal, one should be charged under this statute and not under the terms of a general statute, which provides for a greater punishment." But the court further states:

"This does not mean that one may not be charged under different statutes when both are applicable, and the state has the right to elect under which it may proceed." Griswold v. State, 23 Okla. Cr. 136, 212 P. 1018.

In the instant case both of the statutes above quoted were special statutes, as distinguished from the general embezzlement statute. Hays v. State, supra.

The contention of defendant that under the terms of the information it was necessary that the state prove that defendant had embezzled the sum of $1,306.54 in a lump sum cannot be sustained.

In the case of State v. Bunch, 23 Okla. Cr. 388, 214 P. 1093, 1094, it is said:

"In this regard section 7437 (Tit. 69 O. S. 1941 § 263) is broader and more comprehensive than section 3213 (Tit. 22 O. S. 1941 § 1163). The thing prohibited by the

provisions of section 7437 is not the misappropriation of any particular item or fund, but the misappropriation of any and all funds, in violation of his trust as a public officer. In this case the embezzlement charged, in the amount of $5,845.61, was probably made up of a multitude of items derived from various sources. But one offense is stated, and it is not necessary in such a case to plead specifically a description of the individual items composing the aggregate. The manifest purpose of this statute was to make a blanket provision covering any or all such delinquencies, constituting but one offense. Otherwise there is no excuse for this statute. If each item constituted a separate offense, to be separately pleaded and proved, then the provisions of section 2671, R. L. 1910 (Tit. 21 O. S. 1941 § 1452), a section of the general Penal Code, would have been sufficient. The difficulty and sometimes utter impossibility of making specific allegations and proof in such cases was doubtless recognized by the Legislature, which enacted section 7437 to meet this apparent defect inherent in the general embezzlement statutes of the Criminal Code."

The reasoning in this case has special application to the facts here presented. See, also, Abernathy v. State, supra; Lyon v. State, supra; Griswold v. State, supra; Casselman v. State, 58 Okla. Cr. 371, 54 P. 2d 678.

We have carefully examined the record with reference to defendant's contention that incompetent and improper evidence was admitted. This has special reference to the testimony of the auditor from the office of the State Examiner and Inspector, and the records offered in evidence. We do not find any error justifying a reversal of this case. The original records from the office of the Commissioners of the Land Office were offered in evidence, and the auditor testified as to his examination and inspection of those books and explained them to the jury from the original entries in the records of the Commission. It is unneces-

sary to go into detailed discussion of this evidence. We cite the cases of Hutchman v. State, 61 Okla. Cr. 117, 66 P. 2d 99, and Hays v. State, supra, which discuss this proposition more fully.

This defendant had a fair and impartial trial. The record here reveals that one who had been entrusted with the responsibility of collecting the funds belonging to the school children of the state failed in this duty and responsibility and not only failed to protect these funds, but appropriated them to his own use and benefit. The laws of this state provide, as above noted, that one who violates this trust and duty shall be punished.

The judgment of the district court of Craig county is affirmed.

JONES and BRETT, JJ., concur.